Jay A. Jerde, WSB #6-2773
Special Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
jay.jerde@wyo.gov

*Counsel for Petitioner State of Wyoming*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| STATE OF WYOMING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-00092-ABJ |
| | ) | |
| DEB HAALAND, in her official capacity | ) | |
| as Secretary of the United States | ) | |
| Department  of the Interior; | ) | |
| MARTHA WILLIAMS, in her | ) | |
| official capacity as Director of the | ) | |
| United States Fish and Wildlife Service, | ) | |
| | ) | |
| Respondents. | ) | |

_____

## Petitioner State of Wyoming's Opening Brief

_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUE............................................................... 2

INTRODUCTION ................................................................................. 3

STATEMENT OF THE CASE................................................................ 4

    I.    The Facts Relevant to the Issue Presented for Review and the
        Relevant Procedural History .................................................. 4

    II.   The Ruling Presented for Review ...................................... 10

ARGUMENT ...................................................................................... 11

    I.    Secretary Haaland and Director Williams are unlawfully
        withholding final agency action by not making a final
        determination on the State's petition to delist.................................... 11

        A.    Standard of Review................................................. 11

        B.    Secretary Haaland and Director Williams were required to
            make a final determination on the State's petition to delist
            within twelve months after receiving the petition and have
            not done so .............................................................. 12

    II.   This Court should order Secretary Haaland and Director
        Williams to make a final decision on the State's petition to delist
        no later than one month after the merits decision in this case ........... 19

CONCLUSION ................................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Baystate Med. Ctr. v. Leavitt*,
  587 F.Supp.2d 37 (D.D.C. 2008)........................................................................21

*Biodiversity Legal Found. v. Babbitt*,
  146 F.3d 1249 (10th Cir. 1998) .................................................. 11, 12

*Biodiversity Legal Found. v. Badgley*,
  309 F.3d 1166 (9th Cir. 2002) ........................................................16

*Brock v. Pierce Cnty.*,
  476 U.S. 253 (1986)........................................................................19

*Clark v. Shrader*,
  Civil Action No. 20-cv-01410-DDD-KLM, 2021 WL 229283 (D. Colo.
  Jan. 22, 2021) ................................................................................ 31

*Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.*,
  259 F.3d 1244 (10th Cir. 2001) ......................................................11

*Crow Indian Tribe v. United States*,
  965 F.3d 662 (9th Cir. 2020) .....................................................5, 10

*Forest Guardians v. Babbitt*,
  174 F.3d 1178 (10th Cir. 1999) ................................................ 15, 20

*Friends of Animals v. Ashe*,
  808 F.3d 900 (D.C. Cir. 2015)................................................... 17, 18

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016)........................................................29

*Greater Yellowstone Coal. v. Servheen*,
  665 F.3d 1015 (9th Cir. 2011) .........................................................4

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)........................................................................27

*Hecht Co. v. Bowles*,
   321 U.S. 321 (1944) ............................................................... 30, 31

*Maralex Res., Inc. v. Barnhardt*,
   913 F.3d 1189 (10th Cir. 2019) ...........................................15

*Mt. Emmons Mining Co. v. Babbitt*,
   117 F.3d 1167 (10th Cir. 1997) ...........................................20

*N. Arapaho Tribe v. Becerra*,
   61 F.4th 810 (10th Cir. 2023) ..............................................15

*N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*,
   248 F.3d 1277 (10th Cir. 2001) ...........................................14

*Navajo Nation v. U.S. Dep't of Interior*,
   852 F.3d 1124 (D.C. Cir. 2017) ...........................................31

*Oklahoma v. EPA*,
   723 F.3d 1201 (10th Cir. 2013) ...........................................19

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
   724 F.3d 230 (D.C. Cir. 2013) .............................................28

*Perrin v. United States*,
   444 U.S. 37 (1979) ...............................................................14

*Phipps v. Comm'r of Internal Revenue*,
   91 F.2d 627 (10th Cir. 1937) ...............................................14

*Portland Audubon Soc'y v. Lujan*,
   884 F.2d 1233 (9th Cir. 1989) .............................................28

*St. Louis Baptist Temple, Inc. v. FDIC*,
   605 F.2d 1169 (10th Cir. 1979) ...........................................25

*Taniguchi v. Kan Pacific Saipan, Ltd.*,
   566 U.S. 560 (2012) .............................................................14

*United States v. Ansberry*,
   976 F.3d 1108 (10th Cir. 2020) ...........................................14

*United States v. Quarrell*,
310 F.3d 664 (10th Cir. 2002) ..............................................................14

*Winzler v. Toyota Motor Sales USA, Inc.*,
681 F.3d 1208 (10th Cir. 2012) .........................................................31

**Statutes**

5 U.S.C. §§ 701-706 ...............................................................................1

16 U.S.C. § 1533 ............................................................ 1, 2, 7, 12, 13, 14

16 U.S.C. § 1540 .....................................................................................1

28 U.S.C. § 1331 .....................................................................................1

Endangered Species Act Amendments of 1982, Pub. L. No. 97-304, 96 Stat.
1412 (1982) ...........................................................................................12

**Rules**

Local Rule 83.6 ......................................................................................1

**Regulations**

Amendment Listing the Grizzly Bear of the 48 Conterminous States as a
Threatended Species, 40 Fed. Reg. 31734 (July 28, 1975) ...................4

Endangered and Threatened Wildlife and Plants; 90-Day Findings for Three
Petitions to Delist the Grizzly Bear in the Lower-48 States, 88 Fed. Reg.
7658 (Feb. 6, 2023)................................................... 1, 7, 9, 13, 19, 28

Endangered and Threatened Wildlife and Plants; Final Rule Designating the
Greater Yellowstone Area Population of Grizzly Bears as a Distinct
Population Segment; Removing the Yellowstone Distinct Population
Segment of Grizzly Bears From the Federal List of Endangered and
Threatened Wildlife; 90-Day Finding on a Petition to List as Endangered
the Yellowstone Distinct Population Segment of Grizzly Bears, 72 Fed.
Reg. 14866 (March 29, 2007)................................................................4

Endangered and Threatened Wildlife and Plants; Initiation of 5-Year Status Review of Grizzly Bear (*Ursus arctos horrbilis*) in the conterminous United States, 85 Fed. Reg. 2143 (Jan. 14, 2020) ...............................................................8

Endangered and Threatened Wildlife and Plants; Removing the Greater Yellowstone Ecosystem Population of Grizzly Bears From the Federal List of Endangered and Threatened Wildlife, 82 Fed. Reg. 30502 (June 30, 2017)........................................................................................5, 22

## Other Authorities

*All. for the Wild Rockies v. Cooley*, Case No. 9:21-cv-00136-DWM (D. Mont. 2023) ...............................................25

*Crow Indian Tribe v. United States*, Nos. 18-36030, 18-36038, 18-36042, 18-36050, 18-36077, 18-36078, 18-36079, 18-36080, 2019 WL 4722338, Corrected Opening Br. for the Fed. Appellants, (Sept. 17, 2019) ...........................................................................6, 27

*The Am. Heritage Dictionary* (2d college ed. 1982) ..............................................15

*Webster's New Collegiate Dictionary* (1977)...........................................................15

## JURISDICTIONAL STATEMENT

On January 10, 2022, the State of Wyoming submitted a *Petition to Establish the Greater Yellowstone Ecosystem (GYE) Grizzly Bear (Ursus arctos horribilis) Distinct Population Segment (DPS) and Remove the GYE Grizzly Bear DPS from the Federal List of Endangered and Threatened Species* (petition to delist) to the Department of the Interior and the United States Fish and Wildlife Service. (FWS00015-00044). The Fish and Wildlife Service received the petition to delist on January 21, 2022. 88 Fed. Reg. 7658, 7659 (Feb. 6, 2023). Secretary Haaland and Director Williams were required by law to make a final determination on the petition to delist within twelve months after receiving it. 16 U.S.C. § 1533(b)(3)(B).

On March 8, 2023, the State sent a notice of intent to sue letter to Secretary Haaland and Director Williams because they had not made a final determination on the State's petition. (FWS00073-00075). As of August 4, 2023, Secretary Haaland and Director Williams have not made a final determination on the petition, and more than sixty days have passed since they received the notice of intent to sue letter. 16 U.S.C. § 1540(g)(2)(C). This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, 16 U.S.C. § 1540(g), 5 U.S.C. §§ 701-706, and Local Rule 83.6.

## STATEMENT OF THE ISSUE

Have Secretary Haaland and Director Williams violated the mandatory twelve

month deadline in § 1533(b)(3)(B)?

[Intentionally Left Blank]

# INTRODUCTION

For the federal agency that must comply with it, a mandatory deadline in a federal statute is like a prairie hail storm – the agency cannot run from it, cannot hide from it, and cannot make it go away. Yet Secretary Haaland and Director Williams apparently believe the mandatory deadlines in the Endangered Species Act do not apply to them. For more than six months now, they have disregarded a mandatory deadline to make a final determination on the State's petition to delist the Greater Yellowstone Ecosystem grizzly bear population. Now that the State has forced their hand by filing this lawsuit, Secretary Haaland and Director Williams have doubled down on their unlawful conduct by asking for another year to make the required determination. The fact that the State had to sue Secretary Haaland and Director Williams to force them to comply with the ESA is appalling. And their stated reason for their inaction—too much work to do and not enough resources to do it—is preposterous. Their unlawful conduct must be remedied, swiftly and resoundingly.

Liability is indisputable here. This Court therefore must decide what the proper remedy should be. To hold them accountable for their unlawful conduct, this Court should order Secretary Haaland and Director Williams to make a final determination on the State's petition to delist no later than one month after this Court issues a final order on the merits in this case and should retain continuing jurisdiction over the case to assure that they comply with this Court's order.

## STATEMENT OF THE CASE

I.   **The Facts Relevant to the Issue Presented for Review and the Relevant Procedural History**

In July 1975, the Service adopted a final rule to list the grizzly bear populations in the conterminous forty-eight states of the United States as a threatened species under the Endangered Species Act. 40 Fed. Reg. 31734-36 (July 28, 1975). This federal action extended ESA protections to the grizzly bear population in the Greater Yellowstone Ecosystem.

In 2007, the Service adopted a final rule to establish the Greater Yellowstone Area (GYA) DPS of the grizzly bear and to delist the GYA DPS. 72 Fed. Reg. 14866-938 (March 29, 2007). In 2011, the 2007 delisting rule was set aside. *Greater Yellowstone Coal. v. Servheen*, 665 F.3d 1015 (9th Cir. 2011). As a result, the Greater Yellowstone Ecosystem population was once again listed as threatened under the ESA.

The Ninth Circuit set aside the 2007 delisting rule on November 22, 2011. *Greater Yellowstone Coal.*, 665 F.3d at 1015. Even though the Ninth Circuit identified only one issue that required further attention on remand, the Service took approximately five and a half years (from November 2011 to June 2017) to issue a new delisting rule.

In 2017, the Service adopted a final rule to establish the Greater Yellowstone Ecosystem (GYE) DPS of the grizzly bear and to delist the GYE DPS. 82 Fed. Reg.

4

30502-633 (June 30, 2017). In July 2020, the 2017 delisting rule was set aside. *Crow Indian Tribe v. United States*, 965 F.3d 662 (9th Cir. 2020). As a result, the Greater Yellowstone Ecosystem population was again listed as threatened under the ESA.

In affirming the district court judgment, the Ninth Circuit panel identified one action that the Service must take before the Greater Yellowstone Ecosystem population can be delisted. The panel directed the Service to conduct a "further examination of the delisting's effect on the remnant grizzly population" living in the conterminous United States outside of the GYE DPS to "determine on remand whether there is a sufficiently distinct and protectable remnant population, so that the delisting of the DPS will not further threaten the existence of the remnant." *Crow Indian Tribe*, 965 F.3d at 678.

The Ninth Circuit panel also identified two other actions that must be taken before the Greater Yellowstone Ecosystem population can be delisted. First, the panel determined that, to ensure the long term genetic health of the population, the states must adopt regulatory mechanisms that make a commitment "to take action if natural connectivity of grizzly bear populations does not occur." *Crow Indian Tribe*, 965 F.3d at 680. Second, the panel held that the Conservation Strategy must include a commitment by the states to recalibrate the post-delisting grizzly bear management goals if a new population estimator is adopted. *Crow Indian Tribe*, 965 F.3d at 680-81.

The Service apparently started working on the remand issues before the appeal of the 2017 delisting was completed. In its merits brief to the Ninth Circuit, the Service stated that it had "already started working on the remand" for the remnant population issue identified by the district court. *Crow Indian Tribe v. United States*, Nos. 18-36030, 18-36038, 18-36042, 18-36050, 18-36077, 18-36078, 18-36079, 18-36080, 2019 WL 4722338, Corrected Opening Br. for the Fed. Appellants, at *1-*2 (Sept. 17, 2019). The Service also stated more generally that it "ha[d] accepted a remand in this case" and was "already working on some of the issues identified by the district court." *Id.* at *13; *see also id.* at *15 (stating that the Service was "already working on the issues remanded in this case").

After the Ninth Circuit opinion was issued in July 2020, the State waited approximately a year and a half for the Service to take action on a new rule to delist the Greater Yellowstone Ecosystem population. In January 2021, a new presidential administration took office. Secretary Haaland and Director Williams are political appointees under that administration. Secretary Haaland took office in mid-March 2021.[1] Director Williams took office in early March 2022.[2]

---

[1] https://www.krqe.com/news/politics/interior-secretary/haaland-takes-oath-of-office-as-secretary-of-interior/

[2] https://www.fws.gov/staff-profile/martha-williams

From July 2020 through the end of December 2021, the Service did not propose a new delisting rule. To move the remand process forward as expeditiously as possible, the State filed a petition to delist the Greater Yellowstone Ecosystem population in January 2022. (FWS00015-00044). The Service received the petition to delist on January 21, 2022. 88 Fed. Reg. at 7659. By filing the petition to delist, the State invoked the mandatory time frames in § 1533(b)(3) to assure that the Service would take action on the petition in a timely manner. *See* 16 U.S.C. § 1533(b)(3)(A)-(B).

To support the petition to delist, the states of Idaho, Montana, and Wyoming amended an existing memorandum of agreement (MOA) regarding the management and allocation of grizzly bear mortality. (FWS00001-00014). To address the concern about recalibration, the three States amended the MOA to include an explicit commitment to adjust the annual management targets and mortality thresholds if a new population estimator replaces the refined model-averaged Chao2 estimator in the future. (FWS00004). To address the concern about long term genetic health, the States amended the MOA to include an explicit commitment to translocate grizzly bears into the GYE DPS as needed to maintain or augment genetic diversity. (FWS00005).

In late January 2021, the Service issued a Species Status Assessment for the grizzly bear population in the lower-48 states of the United States.[3] The biologists with the Service's Grizzly Bear Recovery Program prepared the 2021 Status Assessment with help from the Mountain-Prairie Region and the Pacific Northwest Region offices.[4] In the 2021 Status Assessment, the Service reported the findings of its comprehensive review of the life history, ecology, threats, and viability of grizzly bears in the lower-48 states, including the Greater Yellowstone Ecosystem.[5] The Service issued an update to the 2021 Status Assessment on January 21, 2022, the same day it received the State's petition to delist.[6]

In late March 2021, the Service released a five year status review for the grizzly bear populations in the lower-48 states.[7] This status review was legally required under the ESA. 85 Fed. Reg. 2143, 2144 (Jan. 14, 2020).

On February 6, 2023, Director Williams found that the State's petition to delist presents substantial information that designating a DPS for the Greater Yellowstone Ecosystem grizzly bear population and that delisting the DPS may be warranted. 88

---

[3] *See* https://ecos.fws.gov/ServCat/DownloadFile/196991

[4] *See* https://ecos.fws.gov/ServCat/DownloadFile/196991 at 2

[5] *See* https://ecos.fws.gov/ServCat/DownloadFile/196991 at 3

[6] *See* https://ecos.fws.gov/ServCat/DownloadFile/213247

[7] *See* https://ecos.fws.gov/docs/tess/species_nonpublish/942.pdf

Fed. Reg. at 7660. She took approximately twelve and a half months (from late January 2022 to early February 2023) to make the initial determination on the State's petition to delist.

In the Federal Register notice for the initial determination, Director Williams announced that "we plan to initiate" a status review to determine whether the actions requested in the State's petition are warranted. 88 Fed. Reg. at 7658. She then stated that she would issue "a 12-month petition finding" based upon the status review. 88 Fed. Reg. at 7660.

On March 8, 2023, the State sent a sixty day notice of intent to sue letter to Secretary Haaland and Director Williams via certified mail. (FWS00073-00075). In this letter, the State asked Secretary Haaland and Director Williams to make a final determination on the State's petition to delist. (*Id.*). After receiving the notice of intent letter, Secretary Haaland and Director Williams took no action on the State's petition. On May 24, 2023, the State filed a petition in this Court seeking judicial review of their inaction on the State's petition. (ECF_1; ECF_7).

In the administrative record for this case, the Service included a declaration from Matt Hogan, the Regional Director for the Mountain-Prairie Region of the Service. (FWS00082-00085). In his declaration, Hogan incorrectly insinuates that the states of Idaho, Montana, and Wyoming have not yet fully complied with the

2020 court opinion regarding recalibration.[8] (FWS00083, ¶ 4). He then describes various "competing priorities" that apparently prevented the Service from complying with the twelve month deadline in § 1533(b)(3)(B) and that apparently will prevent Secretary Haaland and Director Williams from making a final determination on the State's petition to delist in the near future. (FWS00083-00084, ¶¶ 5-9). Hogan estimates that the Service may require another year (until July 31, 2024) to complete its work on the petition. (FWS00084-00085, ¶¶ 9-10).

## II.    The Ruling Presented for Review

In this case, the State asks this Court to determine whether Secretary Haaland and Director Williams are unlawfully withholding final agency action. As a result, no ruling exists for this Court to review. This Court must decide whether the inaction by Secretary Haaland and Director Williams violates § 1533(b)(3)(B) and therefore warrants a remedy under 5 U.S.C. § 706(1) in the Administrative Procedure Act.

---

[8] Hogan declares that, "[a]lthough the states have made some progress on recalibration, it has not yet been completed." (FWS00083, ¶ 4) (alteration added). He is referring to the process of identifying the best population estimator to use and recalibrating the management targets and mortality thresholds using that estimator. That process is separate from what the Ninth Circuit panel said must be done on remand. The panel stated that "[a] commitment to recalibration is necessary in the event that the states adopt a new estimator[.]" *Crow Indian Tribe*, 965 F.3d at 681 (alterations added). The states have made the necessary commitment to recalibration in the MOA. (FWS00004). Which estimator to use and the associated management goals are details that the signatories to the Conservation Strategy will decide when the Service drafts a proposed delisting rule.

## ARGUMENT

I. **Secretary Haaland and Director Williams are unlawfully withholding final agency action by not making a final determination on the State's petition to delist.**

The facts and the law relevant to the issue in this case are undisputed – Secretary Haland and Director Williams were required by statute to make a final determination on the State's petition to delist within twelve months after they received the petition, more than twelve months have passed since they received the petition, and they have not yet made the statutorily required final determination. This Court, therefore, should hold that Secretary Haaland and Director Williams are unlawfully withholding agency action required by § 1533(b)(3)(B).

A. **Standard of Review**

The State seeks judicial review under the ESA citizen suit provision in 16 U.S.C. § 1540(g)(1)(C). The Administrative Procedure Act governs judicial review of agency action or inaction under the ESA citizen suit provision. *Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.*, 259 F.3d 1244, 1249 (10th Cir. 2001). "Under the APA, administrative decisions involving the ESA are upheld unless they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Biodiversity Legal Found. v. Babbitt*, 146 F.3d 1249, 1252 (10th Cir. 1998) (citation and internal quotation marks omitted). A claim that the Service has not made a required finding under § 1533(b)(3) should be reviewed under the "agency

action unlawfully withheld or unreasonably delayed" standard in 5 U.S.C. § 706(1). *See Biodiversity Legal Found.*, 146 F.3d at 1252 (applying § 706(1) to review a claim of agency action unlawfully withheld for a 90-day finding under § 1533(b)(3)(A)).

> **B.    Secretary Haaland and Director Williams were required to make a final determination on the State's petition to delist within twelve months after receiving the petition and have not done so.**

The issue in this case arises from the statutory requirements the Secretary of the Interior (or her designee) must follow after she receives a petition to delist a species. This two-step process is found in § 1533(b)(3). The current version of § 1533(b)(3) was added to the ESA in 1982. *See* Endangered Species Act Amendments of 1982, Pub. L. No. 97-304, § 2, 96 Stat. 1412 (1982).

Subsection (b)(3)(A) requires the Secretary to initially determine whether a petition to delist "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). "To the maximum extent practicable," the Secretary must make this initial determination within ninety days after receiving a petition to delist. *Id.*

If the Secretary determines the petitioned action may be warranted, she then must "promptly commence a review of the status of the species concerned." *Id.* Here, the Service determined that delisting the Greater Yellowstone Ecosystem grizzly bear population as proposed in the State's petition to delist may be warranted. 88

Fed. Reg. at 7660. As a result, the Secretary was required to "promptly commence" a status review for the Greater Yellowstone Ecosystem population. 16 U.S.C. § 1533(b)(3)(A).

Subsection 1533(b)(3)(B) governs the timing of this status review. This subsection provides as follows, in pertinent part:

> (B) **Within 12 months after receiving a petition** that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted, the Secretary **shall** make one of the following findings:

> (i) The petitioned action is not warranted, in which case the Secretary shall promptly publish such finding in the Federal Register.

> (ii) The petitioned action is warranted, in which case the Secretary shall promptly publish in the Federal Register a general notice and the complete text of a proposed regulation to implement such action in accordance with paragraph (5).

> (iii) The petitioned action is warranted, but that—

> (I) the immediate proposal and timely promulgation of a final regulation implementing the petitioned action in accordance with paragraphs (5) and (6) is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and

> (II) expeditious progress is being made to add qualified species to either of the lists published under subsection (c) and to remove from such lists species for which the protections of the Act are no longer necessary, in which case the Secretary shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based. …

16 U.S.C. § 1533(b)(3)(B) (emphasis added).

To decide the issue in this case, this Court must interpret § 1533(b)(3)(B). In doing so, this Court primarily seeks "to determine congressional intent, using traditional tools of statutory interpretation." *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1281 (10th Cir. 2001) (citations and internal quotation marks omitted).

"When interpreting the language of a statute, the starting point is always the language of the statute itself." *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002). This Court should give effect "if possible, to every word, phrase, clause, and sentence" in the statute. *Phipps v. Comm'r of Internal Revenue*, 91 F.2d 627, 631 & n.4 (10th Cir. 1937) (Phillips, C. J., dissenting) (collecting cases). Undefined words and phrases in the statute should be given their ordinary meaning as understood at the time Congress enacted the statute. *Perrin v. United States*, 444 U.S. 37, 42 (1979). To do so, this Court should consult a dictionary in use at the time Congress enacted the text at issue. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012).

If the statutory language at issue is clear and unambiguous, this Court's inquiry ends and it gives effect to the plain language of the statute. *United States v. Ansberry*, 976 F.3d 1108, 1126 (10th Cir. 2020). A statute is unambiguous if it has

14

only one reasonable interpretation.[9] *See N. Arapaho Tribe v. Becerra*, 61 F.4th 810, 814 (10th Cir. 2023) (stating that an unambiguous statute cannot have "competing reasonable interpretations").

Three words drive the interpretation of § 1533(b)(3)(B) – "within," "after," and "shall." As used in § 1533(b)(3)(B):

- The word "within" means "before the end of." *Webster's New Collegiate Dictionary* 1347 (1977); *see also The Am. Heritage Dictionary* 1387 (2d college ed. 1982) (defining "within" as "[i]nside the fixed limits of; not beyond").

- The word "after" means "subsequent to and in view of." *Webster's New Collegiate Dictionary* 21 (1977); *see also The Am. Heritage Dictionary* 85 (2d college ed. 1982) (defining "after" as "[s]ubsequent to and because of").

- The word "shall" imposes "a mandatory duty upon the subject of the command." *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) (collecting cases).

With these meanings in mind, § 1533(b)(3)(B) unambiguously requires the Secretary to do two things after she receives a petition to delist. First, the phrase "the Secretary shall make one of the following findings" imposes a mandatory duty upon

---

[9] Conversely, "[a] statute is ambiguous if it is reasonably susceptible to more than one interpretation or capable of being understood in two or more possible senses or ways." *Maralex Res., Inc. v. Barnhardt*, 913 F.3d 1189, 1201 (10th Cir. 2019) (citation and internal quotation marks omitted) (alteration added).

the Secretary to make a final determination on the merits of a petition to delist by making one of three findings – the petitioned action is not warranted, the petitioned action is warranted, or the petitioned action is warranted but precluded (for one of two specific reasons).

Second, the phrase "Within 12 months after receiving a petition" requires the Secretary to make the finding on the merits of the petition to delist before the end of a twelve month period that starts to run when she receives the petition. Or, stated differently, § 1533(b)(3)(B) imposes a mandatory duty upon the Secretary to make a final determination on a petition to delist no later than twelve months after receiving the petition.

Two federal courts of appeals have interpreted § 1533(b)(3)(B) in a similar manner. In 2002, the Ninth Circuit Court of Appeals interpreted § 1533(b)(3)(B) in addressing the question of whether § 1533(b)(3)(A) gives the Service an indefinite period of time to make an initial finding on a petition. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175-76 (9th Cir. 2002). The Ninth Circuit panel first concluded that § 1533(b)(3)(B) "imposes a firm twelve-month deadline for making final determinations. " *Biodiversity Legal Found.*, 309 F.3d at 1175. It then held that the ninety day initial determination § 1533(b)(3)(A) and the twelve month final determination under § 1533(b)(3)(B) both must be made within one year after receiving a petition. *Biodiversity Legal Found.*, 309 F.3d at 1176.

In 2015, the District of Columbia Circuit Court of Appeals interpreted the deadline language in § 1533(b)(3) in addressing the question of whether an advocacy group had given proper notice to the Service under the ESA citizen suit provision before seeking a court order to compel the Service to make a final determination on a petition to list. *Friends of Animals v. Ashe*, 808 F.3d 900, 901-02 (D.C. Cir. 2015). In *Friends of Animals*, more than twelve months had passed since the Service received a petition to list and the Service had taken no action on the petition. *Friends of Animals*, 808 F.3d at 903.

The *Friends of Animals* panel concluded that the non-discretionary duty to make the final determination under § 1533(b)(3)(B) does not arise until the Service makes a positive initial determination under § 1533(b)(3)(A). *Friends of Animals*, 808 F.3d at 904. This is true even if the Service delays and makes a positive initial determination on a petition more than twelve months after receiving it. *Friends of Animals*, 808 F.3d at 904-05.

Regardless of when the Service makes the initial determination on a petition, however, the twelve month deadline in § 1533(b)(3)(B) is a "hard" and "inflexible" deadline that has no exceptions. *Friends of Animals*, 808 F.3d at 901-02. To emphasize this point, the *Friends of Animals* panel reiterated three times that the twelve month deadline in § 1533(b)(3)(B) is calculated from the date the petition

17

was filed, not from the date of the initial determination on the petition. *Friends of Animals*, 808 F.3d at 901, 902, 903.

Therefore, under the *Friends of Animals* interpretation, if the Service makes a positive initial determination on a petition more than twelve months after receiving it, the Service then has an immediate, mandatory duty to make a final determination on the petition because more than twelve months have passed since the Service received the petition. The *Friends of Animals* court acknowledged as much when it stated that "a court ordinarily may order the Service to make a final determination" on a petition as long as at least twelve months have passed from the date the petition was filed and the Service has made a positive initial determination on the petition. *Friends of Animals*, 808 F.3d at 905.

This Court should follow *Biodiversity Legal Foundation* and *Friends of Animals* as persuasive precedents when interpreting § 1533(b)(3)(B). Under these precedents, § 1533(b)(3)(B) imposes a mandatory duty on the Secretary to make a final determination on a petition to delist no more than twelve months after she receives the petition. And, if the Secretary takes more than twelve months to make a positive initial determination on the petition under § 1533(b)(3)(A), then she has an immediate, mandatory duty to make a final determination on the petition at the time that she makes the positive initial determination.

In this case, the Service received the State's petition to delist on January 21, 2022. 88 Fed. Reg. at 7659. Director Williams made a positive initial determination on the petition to delist on February 6, 2023 88 Fed. Reg. at 7660. When she made the initial determination, more than twelve months had passed since the Service received the petition to delist, so she had an immediate, mandatory duty to make a final determination on the petition to delist as soon as she made the positive initial determination. To date, Director Williams has not made a final determination on the petition to delist. This Court, therefore, should hold that Secretary Haaland and Director Williams have violated the mandatory deadline in § 1533(b)(3)(B) because they have not made a final determination on the State's petition to delist.

II.     **This Court should order Secretary Haaland and Director Williams to make a final decision on the State's petition to delist no later than one month after the merits decision in this case.**

Secretary Haaland and Director Williams have not complied with the mandatory deadline in § 1533(b)(3)(B), so the question becomes what is an appropriate remedy for their non-compliance. Generally, when an agency does not comply with a mandatory statutory deadline and the statute does not prescribe a remedy for non-compliance, the aggrieved party must seek a remedy under § 706(1) to compel the agency to act. *Brock v. Pierce Cnty.*, 476 U.S. 253, 260 n.7 (1986); *see also Oklahoma v. EPA*, 723 F.3d 1201, 1224 (10th Cir. 2013) (citing *Brock* for the proposition that, absent a clear statutory remedy for non-compliance with a

19

statutory deadline, "the appropriate remedy is simply a suit to compel agency action").

The remedy available under § 706(1) is a mandatory injunction essentially in the nature of mandamus relief. *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997). Under § 706(1), "when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act." *Forest Guardians*, 174 F.3d at 1190. Here, Secretary Haaland and Director Williams have not complied with an absolute deadline imposed by § 1533(b)(3)(B). Consistent with § 706(1) this Court must order them to make a final determination on the State's petition to delist.

To avoid further unnecessary delay in this matter, this Court should impose a specific deadline for Secretary Haaland and Director Williams to make the final determination on the State's petition to delist. Given that they have had more than six additional months to consider the merits of the petition to delist (and more than eighteen months total), this Court should require them to make a final determination on the petition no later than one month after this Court issues an order on the merits in this case, subject to being held in contempt of court if they do not meet the court imposed deadline.

This Court also should retain jurisdiction over this case until Secretary Haaland and Director Williams have fully complied with this Court's order on the merits. *See Baystate Med. Ctr. v. Leavitt*, 587 F.Supp.2d 37, 41 (D.D.C. 2008) (noting that, in a case involving the failure of a federal agency to comply with a statutory deadline, a federal district court has the discretion to retain jurisdiction over a case until the agency completes its work on remand). Secretary Haaland and Director Williams have already missed two mandatory statutory deadlines (one for the initial determination and one for the final determination), so they should not be trusted to comply with the deadline ordered by this Court.

This remedy should not cause undue prejudice to Secretary Haaland and Director Williams. They have ample personnel resources available to work on the response to the State's petition to delist. The Service has seven full time employees who oversee the grizzly bear recovery efforts in six western ecosystems (including the Greater Yellowstone Ecosystem) through the Grizzly Bear Recovery Program.[10] The Service employs more than 8,000 people agency-wide,[11] including

---

[10] *See* https://www.cfc.umt.edu/grizzlybearrecovery/about/staff.php

[11] *See* https://www.fws.gov/about/staff/search

approximately 185 people employed in the Mountain-Prairie Region Office.[12] And the Department of the Interior employs approximately 70,000 employees.[13]

The Service also has access to a wealth of current information regarding the biological status of the Greater Yellowstone Ecosystem grizzly bear population in the 2021 Species Status Assessment (as updated in 2022) and in the March 2021 five year status review. In addition, the Service has access to other information relevant to delisting that it gathered and evaluated when it delisted the Greater Yellowstone Ecosystem population in 2017. *See generally* 82 Fed. Reg. at 30502-30633.

Given the vast amount of personnel resources and information available to them, Secretary Haaland and Director Williams should be able to make a final determination on the petition within a month of this Court's order on the merits in this case. If the seven full time employees of the Grizzly Bear Recovery Program need help in completing the response to the State's petition to delist, the Service can assign personnel from the Mountain-Prairie Region and the Pacific Northwest Region offices to assist with the work.[14] To give Secretary Haaland and Director

---

[12] *See* https://www.fws.gov/about/staff/search (click the Mountain-Prairie box in the "Refine Your Results" filter)

[13] *See* https://www.doi.gov/employees/about

[14] The Mountain-Prairie Region and Northwest Pacific Region offices assisted with the 2021 Species Status Assessment and the 2022 update to that Assessment, so presumably those offices have personnel who also can help with the response to the State's petition to delist.

Williams more than a month to make the final determination would reward them for flouting the mandatory deadline in § 1533(b)(3)(B) and may incentivize them to act in a similar fashion in the future.

Now that Secretary Haaland and Director Williams can no longer ignore the mandatory deadline in § 1533(b)(3)(B), the Service insists that it needs another year to complete the review of the State's petition to delist. (FWS00084-00085, Hogan Decl. ¶¶ 9-10). The Service's stated reasons for this further delay are a "significant workload and limited resources." (FWS00084, Hogan Decl. ¶ 8). More specifically, the Service identifies four other projects that it will be working on over the next twelve months in addition to the State's petition. (FWS00084, Hogan Decl. ¶¶ 8-9).

This Court should reject the request for another twelve months to complete the review of the State's petition to delist. In essence, the Service says that the "Service staff" who will be working on the State's petition also have the four other projects to complete. (FWS00084, Hogan Decl. ¶ 9). But the Service does not say how many individuals the "Service staff" consists of and does not address why other individuals from the Mountain-Prairie Region Office, from other Service offices, or from the Department of the Interior cannot be assigned to help with the work so that the Service can make a final determination on the State's petition sooner than twelve months from now. The Service also has not explained:

• Why the petition to delist the grizzly bear population in the Northern Continental Divide Ecosystem (NCDE) should be given equal stead or priority over making a final determination on the State's petition to delist. The State's petition aligns with the on-going remand from the litigation on the 2017 delisting rule. Secretary Haaland and Director Williams should not give priority to the NCDE petition over completing the pre-existing remand work regarding the Greater Yellowstone Ecosystem population. Making a final determination on the State's petition will bring that remand work to a close.

• Why the annual update to the 2021 Species Status Assessment and the joint proposal to restore grizzly bears to a different ecosystem should be given equal stead or priority over completing its review on the State's petition to delist when Secretary Haaland and Director Williams continue to violate the mandatory deadline in § 1533(b)(3)(B) with each day that passes without a final determination on the petition. The ESA does not require the Secretary to do a Species Status Assessment, let alone provide annual updates to an existing Assessment. The ESA also does not require the Secretary to reintroduce grizzly bears to a different ecosystem. Secretary Haaland and Director Williams should not give these voluntary, discretionary actions priority over their mandatory duty to make a final determination on the State's petition.

• Why compliance with the court order related to grizzly bear restoration in the Bitterroot Ecosystem should be given equal stead or priority over making a final determination on the State's petition to delist. In his declaration, Hogan does not give this Court any specific information about the timeline for compliance in the Bitterroot case. Based on court filings in that case, it appears that the Service has at least forty-three months to complete the work required under that court order. *See All. for the Wild Rockies v. Cooley*, Case No. 9:21-cv-00136-DWM, Dkt. Nos. 47, 48, 50 (D. Mont. 2023).[15] A court-ordered deadline that is more than three years in the future should not be given priority over a mandatory statutory deadline that should have been complied with six months ago.

Also noticeably absent from the Service's request for more time is an accounting of the work the Service did on the remand issues and on the State's petition to delist during two time periods – from mid-March 2021 to January 21, 2023, and from February 6, 2023, to now. Information about the work done during the first time period would give insight into whether the Service either slowed down or stopped working on the remand issues and the petition after Secretary Haaland

---

[15] This Court can take judicial notice of the records from the Bitterroot case because Hogan relies on a court order in that case as a reason for why the Service cannot act in a more timely manner here. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (explaining that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

and Director Williams took office. Information about the work done during the second time period would give insight on whether the Service did any work on the petition during that time period. This Court should not give Secretary Haaland and Director Williams more time to make a final determination on the petition if the Service was not working on the petition when it should have been.

In the final analysis, this Court should deny the request for additional time to make a final determination on the State's petition to delist because the Service has frittered away eighteen months with no identifiable progress towards making the final determination on the petition. Granting the request for an additional twelve months to make a final determination on the petition will reward Secretary Haaland and Director Williams for disregarding the mandatory twelve month deadline in § 1533(b)(3)(B) and for apparently doing little or no work on the petition up to now. They must be held accountable for their dismissive approach to the mandatory dictates of the ESA. Requiring them to marshal the vast resources at their disposal to make a legitimate final determination on the petition no later than a month after this Court decides the merits of this case will, to a certain extent, hold them accountable.

Yet, even if this Court orders the requested remedy, Secretary Haaland and Director Williams still will not have been held fully accountable for their inaction on the State's petition to delist. The evidence surrounding their handling of the

26

State's petition to delist plainly shows that Secretary Haaland and Director Williams deliberately disregarded the twelve month deadline in § 1533(b)(3)(B). Given their immediate access to a wealth of current biological information and given the vast personnel resources under their command, Secretary Haaland and Director Williams could have and should have made a final determination on the petition before January 21, 2023. The Service was well positioned to act in a timely manner on the State's petition because it had been working on the remand issues for almost a year and a half before Secretary Haaland took office. *Crow Indian Tribe*, 2019 WL 4722338, Corrected Opening Br. for the Fed. Appellants, at *1-*2. If the Service continued to work on the remand issues after Secretary Haaland took office, it would have been working on remand for more than two years before it received the State's petition.

Secretary Haaland and Director Williams also should have known that a final determination on the State's petition to delist was due when they made the initial determination on the petition. "[A] reasonably competent government official should know the law governing [her] conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) (alterations added). Secretary Haaland and Director Williams should have known about the interpretation of § 1533(b)(3) by the D.C. Circuit panel in *Friends of Animals* and therefore should have known that, by making the initial determination on the petition more than twelve months after they received it, both

the initial and final determinations were due at the same time. Yet, despite this imputed knowledge, Director Williams announced that the Service had not even started the status review required by § 1533(b)(3) at the time the initial determination was made. 88 Fed. Reg. at 7658.

In light of these facts, the only plausible explanation for why Secretary Haaland and Director Williams did not make the final determination on the petition in a timely manner is that they did not want to do so. Or, in other words, they deliberately disregarded the mandatory twelve month deadline imposed by § 1533(b)(3)(B). The deliberateness of their conduct warrants an additional remedy from this Court beyond the one provided by § 706(1).

In this country, "citizens have a right to assume that federal officials will comply with applicable law and to rely on that assumption." *Portland Audubon Soc'y v. Lujan*, 884 F.2d 1233, 1241 (9th Cir. 1989) (citation omitted). After all, "[o]urs is a government of laws, not of bureaucrats." *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 724 F.3d 230, 241 (D.C. Cir. 2013) (Sentelle, Senior C. J., dissenting) (alteration added). A federal official's deliberate disregard of federal law is the consummate betrayal of the public's trust in them.

The actions of Secretary Haaland and Director Williams are particularly damaging to the public's trust because their deliberate disregard of the twelve month deadline in § 1533(b)(3)(B) blatantly undermines the congressional intent behind the

deadline. Congress amended the ESA to add the twelve month deadline in § 1533(b)(3)(B) "in order to 'force [agency] action on listing and delisting proposals'—action that up to that point often had proceeded at a molasses-like pace—and to hasten 'the foot-dragging efforts of a delinquent agency.'" *Friends of Animals v. Jewell*, 828 F.3d 989, 993 (D.C. Cir. 2016) (quoting H.R. REP. NO. 97-835, at 20–22 (1982) (Conf. Rep.)) (alteration in original). Here, Secretary Haaland and Director Williams are engaging in the type of administrative foot-dragging that the twelve month deadline was specifically intended to stop.

The actions of Secretary Haaland and Director Williams also undermine the effectiveness of the ESA. The ESA succeeds only when the states work with the Secretary to take the actions necessary to promote the recovery of a listed species. For example, the grizzly bear population in the Greater Yellowstone Ecosystem likely would not have achieved biological recovery without the work, money, and time the State of Wyoming devoted to grizzly bear recovery efforts over the past forty plus years as it worked collaboratively with the Service. That type of collaborative working relationship cannot exist if Secretary Haaland, Director Williams, and the Service cannot be trusted to follow the legal requirements of the ESA. By deliberately not taking action on the State's petition to delist, Secretary Haaland and Director Williams have done immeasurable damage to the public's trust in them to be accountable, law-abiding government officials. They cannot be held

29

fully accountable for their unlawful conduct unless they are required to take some action that will mitigate the negative impacts of their inaction here.

When a federal official deliberately disregards federal law, the remedy available under § 706(1) provides a measure of accountability by compelling the federal official to do what the law requires her to do. But ordering Secretary Haaland and Director Williams to do what they should have done more than six months ago does not hold them fully accountable for their deliberate disregard of the twelve month deadline in § 1533(b)(3)(B). The remedy available under § 706(1) does not redress the damage done to the public's trust as a result of their deliberate conduct and also does nothing to deter them from deliberately disregarding federal law in the future.

Given the deliberate nature of their conduct,  this Court could fashion an additional remedy beyond § 706(1) to address the unlawful conduct of Secretary Haaland and Director Williams with the intent of restoring public trust in them and with the intent of deterring them from engaging in similar conduct in the future. To this end, this Court has broad equitable powers to fashion an appropriate remedy.

"An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) (citation omitted). "Equitable doctrines are grounded in fairness and justice, and their application implies the

30

occurrence of atypical circumstances." *Navajo Nation v. U.S. Dep't of Interior*, 852 F.3d 1124, 1129 (D.C. Cir. 2017) (internal citations omitted). This Court's equitable "discretion necessarily includes the power to 'mould each decree to the necessities of the particular case.'" *Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (quoting *Hecht Co.*, 321 U.S. at 329).

Without question, an equitable remedy is warranted in this case because the remedy in § 706(1) does not hold Secretary Haaland and Director Williams fully accountable for their deliberate disregard of § 1533(b)(3)(B). In terms of an effective equitable remedy, one remedy that fits the bill would be an order requiring Secretary Haaland and Director Williams to publicly apologize for deliberately disregarding federal law.[16] Ordering them to publicly apologize for deliberately disregarding the deadline in § 1533(b)(3)(B) falls squarely within this Court's equitable discretion – a public apology may deter them from engaging in similar conduct in the future, thereby re-establishing the public trust in them as public officials.

Unfortunately, although completely warranted, the State is concerned that ordering Secretary Haaland and Director Williams to publicly apologize would

---

[16] In the context of actions brought under 42 U.S.C. § 1983, a number of courts have held that ordering a governmental official to apologize is not an available remedy. *See, e.g., Clark v. Shrader*, Civil Action No. 20-cv-01410-DDD-KLM, 2021 WL 229283, at *3 (D. Colo. Jan. 22, 2021) (collecting cases). This case is not a § 1983 case, however.

allow them to further delay final action on the State's petition to delist. If this Court orders Secretary Haaland and Director Williams to publicly apologize, they may appeal and would likely not have to make a final determination on the State's petition until the appeal is decided. Thus, although Secretary Haaland and Director Williams should be ordered to publicly apologize, at this time the State only asks this Court to order the appropriate § 706(1) remedy and order them to make the final determination on the State's petition no later than one month after this Court issues a final order on the merits in this case.

[Intentionally Left Blank]

## CONCLUSION

For the foregoing reasons, this Court should: (1) hold that Secretary Haaland and Director Williams have violated the mandatory twelve month deadline in § 1533(b)(3)(B); (2) order Secretary Haaland and Director Williams to make a final determination on the State's petition to delist no later than one month after this Court issues an order on the merits in this case; and (3) retain continuing jurisdiction over this case to assure that Secretary Haaland and Director Williams comply with the Court's order on the merits in this case.

Dated this 4th day of August, 2023.


Attorney for Petitioner State of Wyoming


/s/ *Jay Jerde*
Jay Jerde, WSB #6-2773
Special Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
jay.jerde@wyo.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,333 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type style requirements of D. Wyo. Local Civ. R. 10.1(a) and Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Word 2010 in 14 point font size and Times New Roman.

/s/ *Jay Jerde*

## CERTIFICATE OF SERVICE

I certify that on this 4th day of August 2023, I electronically filed the foregoing with the Clerk of the U.S. District Court for the District of Wyoming and served all parties using the CM/ECF system.

/s/ *Jay Jerde*