Jay A. Jerde, WSB #6-2773
Special Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-5996
jay.jerde@wyo.gov

*Counsel for Petitioner State of Wyoming*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| STATE OF WYOMING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-00092-ABJ |
| | ) | |
| DEB HAALAND, in her official capacity | ) | |
| as Secretary of the United States | ) | |
| Department of the Interior; | ) | |
| MARTHA WILLIAMS, in her | ) | |
| official capacity as Director of the | ) | |
| United States Fish and Wildlife Service, | ) | |
| | ) | |
| Respondents. | ) | |

_____

## Petitioner State of Wyoming's Reply Brief

_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................. 1

ARGUMENT ...................................................................................... 1

    I.    The Federal Respondents' timing and evidentiary arguments on Article III standing are contrary to binding U.S. Supreme Court and Tenth Circuit precedent. ................................................. 2

    II.   The State has Article III standing to seek judicial review to remedy the ongoing violation of federal law by Secretary Haaland and Director Williams ........................................... 7

        A.   The delay in making a final determination on the petition to delist has caused and continues to cause injury in fact to the State ................................................................ 8

        B.   The cause of the State's irreparable injury is fairly traceable to Secretary Haaland and Director Williams ........... 12

        C.   The remedy requested by the State will redress its injuries in fact ......................................................... 14

        D.   The evidence in the administrative record shows that the State has Article III standing ………………………………14

    III.  The Federal Respondents' requested deadline for making a final determination on the State's petition to delist is unreasonable .......... 15

CONCLUSION ................................................................................... 20

CERTIFICATE OF COMPLIANCE .................................................... 21

CERTIFICATE OF SERIVCE ............................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
  41 F.4th 586 (D.C. Cir. 2022) ..................................................................6

*Bear Lodge Multiple Use Ass'n v. Babbitt*,
  175 F.3d 814 (10th Cir. 1999) ...............................................................4

*Bear Lodge Multiple Use Ass'n v. Babbitt*,
  2 F.Supp.2d 1448 (D. Wyo. 1998).........................................................4

*Colony Ins. Co. v. Burke*,
  698 F.3d 1222 (10th Cir. 2012) .............................................................2

*Ctr. for Biological Diversity v. Haaland*,
  No. 20-573 (EGS), 2023 WL 2401662 (D.D.C. March 8, 2023) ...................13

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016)...............................................................9

*Habecker v. Town of Estes Park, Colo.*,
  518 F.3d 1217 (10th Cir. 2008) ...........................................................12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................... 4, 6, 7, 14

*Maine v. Norton*,
  257 F.Supp.2d 357 (D. Me. 2003) ................................................. 10, 11

*N. Mill St., LLC v. City of Aspen*,
  6 F.4th 1216 (10th Cir. 2021) ...............................................................8

*N. N.M. Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*,
  30 F.4th 1210 (10th Cir. 2022) ............................................................14

*Nat. Res. Def. Council v. Train*,
  510 F.2d 692 (D.C. Cir. 1974)..............................................................15

*Nw. Env't Def. Ctr. v. Bonneville Power Admin.*,
   117 F.3d 1520 (9th Cir. 1997)..................................................................3

*Powder River Basin Res. Council v. Babbitt*,
   54 F.3d 1477 (10th Cir. 1995) ...............................................................4

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..........................................................................8, 10

*US Magnesium, LLC v. US EPA*,
   690 F.3d 1157 (10th Cir. 2012) ...................................................... 3, 4, 6

*Utah Physicians for a Healthy Env't v. Diesel Power Gear,LLC*,
   21 F.4th 1229 (10th Cir. 2021) ...............................................................7

*Virginia House of Delegates v. Bethune-Hill*,
   587 U.S. —, 139 S.Ct. 1945 (2019)......................................................3, 4

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...............................................................................8

**Statutes**

16 U.S.C. § 1533 ................................ 8, 9, 10, 12, 13, 14, 16, 17, 18, 19, 20

16 U.S.C. § 1540 ....................................................................................9

Wyo. Stat. Ann. § 23-1-101 .....................................................................11

Wyo. Stat. Ann. § 23-1-103 .....................................................................11

*Wyo. Statutes Annotated* Title 23 (LexisNexis 2023).................................11

**Other Authorities**

*All. for the Wild Rockies v. Cooley*, Case No. 9:21-cv-00136-DWM
   (D. Mont. 2023) ................................................................................18

H.R. REP. NO. 97-835 (1982).................................................................9

## INTRODUCTION

"If you really want to do something, you'll find a way. If you don't, you'll find an excuse."

— Jim Rohn
Entrepreneur and Author

## ARGUMENT

In their Response Brief, the Federal Respondents[1] ask this Court to dismiss the State's petition for judicial review for lack of subject matter jurisdiction because the State allegedly has not demonstrated that it has standing. (Fed. Resp. Br. at 20, 28). Alternatively, they ask this Court to set a deadline of July 2024 for Secretary Haaland and Director Williams to make a final determination on the State's petition to delist. (Fed. Resp. Br. at 3, 15, 20, 21, 28). As explained below, the Federal Respondents' Article III standing arguments lack merit and their requested deadline for making a final determination on the State's petition to delist is unreasonable.

---

[1] The named Respondents in the petition for judicial review are Deb Haaland, the United States Secretary of the Interior, and Martha Williams, the Director of the United States Fish and Wildlife Service. In the Response Brief filed on their behalf, litigation counsel makes a number of arguments and comments that are not attributable to Secretary Haaland and Director Williams only. Therefore, the State will refer to "the Federal Respondents" when addressing arguments and comments not attributable to Secretary Haaland and Director Williams only and will refer to the Secretary and the Director by name when addressing statements and actions (or inactions) attributable only to them.

I.    **The Federal Respondents' timing and evidentiary arguments on Article III standing are contrary to binding U.S. Supreme Court and Tenth Circuit precedent.**

The Federal Respondents have not specified whether they are challenging standing under Article III of the United States Constitution, statutory standing under the Endangered Species Act and the Administrative Procedure Act, or both. The fact that they contend that this Court lacks subject matter jurisdiction means that they have limited their standing argument to Article III standing only. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 n.6 (10th Cir. 2012) (explaining that only Article III standing is jurisdictional). As the following analysis shows, there is no question that the State has Article III standing in this case.

The Federal Respondents contend that the State "failed to carry its burden of demonstrating standing and thus this Court lacks jurisdiction over" the State's petition for judicial review. (Fed. Resp. Br. at 18). To this end, they make a timing argument and an evidentiary argument.

For the timing argument, the Federal Respondents assert that, "once a case progresses" beyond the pleadings stage, the petitioner must produce specific facts that sufficiently demonstrates Article III standing. (Fed. Resp. Br. at 17). In essence, they argue that the State had an affirmative duty to prove its Article III standing in the State's opening brief. For the evidentiary argument, the Federal Respondents complain that the State has not "set forth *any evidence* of standing. No declaration

2

or affidavit has been offered in this case." (Fed. Resp. Br. at 17); (*see also* Fed, Resp. Br. at 2) (exclaiming that, in this case, "there are no standing declarations, not even one"). They then argue that the lack of standing affidavits or declarations "is constitutionally fatal." (Fed. Resp. Br. at 19) (citation omitted) (alterations added). These arguments fail for two reasons.

First, the State did not have an affirmative obligation to demonstrate Article III standing in its opening brief. The burden for a petitioner to demonstrate Article III standing arises only "when standing is questioned by a court or an opposing party[.]" *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. —, —, 139 S.Ct. 1945, 1951 (2019) (alteration added). In addition, when Article III standing is not an issue in the agency proceeding that precipitated the appeal, a petitioner is "entitled to establish standing at any time during the briefing phase" on appeal. *US Magnesium, LLC v. US EPA*, 690 F.3d 1157, 1164 (10th Cir. 2012) (quoting *Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527-28 (9th Cir. 1997)).

Here, the question of whether the State has Article III standing did not arise until the Federal Respondents raised it in their response brief. The duty for the State to identify specific facts to establish its Article III standing therefore did not arise until that time. *See Virginia House of Delegates*, 139 S.Ct. at 1951. And now that

the duty has arisen, the State must make its case for Article III standing and may do so in its reply brief. *See US Magnesium,* 690 F.3d at 1164.

The Federal Respondents have not cited to any existing and controlling precedent that supports their argument that the State must affirmatively prove Article III standing in its opening brief. Their timing argument inexplicably ignores the existing and controlling legal authority in *Virginia House of Delegates* and *US Magnesium* in favor of selected quotations from one United States Supreme Court case and two Tenth Circuit cases that explain general principles of Article III standing. (Fed. Resp. Br. at 17). None of the cases quoted by the Federal Respondents say that a petitioner must affirmatively address Article III standing in its opening brief to the reviewing court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (standing was raised in the district court by a motion to dismiss); *see generally Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477 (10th Cir. 1995); *Bear Lodge Multiple Use Ass'n v. Babbitt*, 175 F.3d 814 (10th Cir. 1999).[2] The Federal Respondents also have not explained how or why this Court can or should depart from the existing and controlling precedent in *Virginia House of Delegates* and *US Magnesium*.

---

[2] Although the Tenth Circuit opinion in *Bear Lodge Multiple Use Ass'n* does not say how standing was raised in the case, the lower court noted that the Federal defendants "contest[ed]" standing in the district court. *Bear Lodge Multiple Use Ass'n v. Babbitt*, 2 F.Supp.2d 1448, 1452 (D. Wyo. 1998) (alteration added).

The Federal Respondents attempt to claim prejudice here, arguing that that the State "deliberately chose not to produce any evidence with its opening brief. And now, [the Federal Respondents] cannot test [the State's] standing arguments. (Fed. Resp. Br. at 19) (alterations added). Any prejudice the Federal Respondents may suffer is a consequence of their own making. They could have raised Article III standing as an issue in a motion to dismiss or at the scheduling conference in this case. Under either scenario, the Federal Respondents would have had the opportunity to affirmatively question the State's standing in an opening legal memorandum and then rebut the State's argument in a reply memorandum. They chose not to avail themselves of these options, so they should not now complain that they will not be able to "test" the State's standing arguments – this is the path they chose to follow.

When all is said and done, the Federal Respondents' argument on when the State must prove standing fails because it is wrong legally. This Court, therefore, should reject the argument.

Second, the State does not have to submit affidavits or declarations to identify the specific facts that establish its Article III standing. Although the Federal Respondents argue that the State has not provided any evidence of standing because it has not submitted any affidavits or declarations, they acknowledge that the applicable legal standard allows the State to rely on affidavits or "other evidence" to

produce the facts necessary to establish Article III standing (Fed. Resp. Br. at 17) (quoting *Lujan*, 504 U.S. at 561). Thus, the Federal Respondents' argument that the State must submit affidavit or declaration testimony to prove Article III standing directly conflicts with *Lujan*, the case they cite in support of their argument.

In an administrative record review case, the "other evidence" referred to in *Lujan* may be found in the administrative record.[3] *See Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 593 (D.C. Cir. 2022) (explaining that "a petitioner may … support standing with evidence in the administrative record") (ellipsis added); *see also US Magnesium,* 690 F.3d at 1164 (explaining that a reviewing court may supplement the administrative record with evidence regarding Article III standing if such evidence is not already in the record). Here, two documents in the administrative record establish the State's Article III standing – the State's petition to delist (FWS00015-00044) and the Federal Register notice for the ninety day finding on the petition to delist (FWS00068-00070).

The Federal Respondents' evidentiary argument on standing is even more legally incorrect than their timing argument because they have cited no existing and controlling precedent that supports their argument, and their argument on this point

---

[3] To the extent that the "other evidence" of standing is not in the administrative record, this Court should allow the administrative record to be supplemented "in any manner necessary" to allow this Court to properly address the Article III standing issue. *US Magnesium,* 690 F.3d at 1165 (citation omitted).

actually contradicts the legal authority (*Lujan*) they cite in support of it. Accordingly, the argument fails as a matter of law.

Having established that: (1) the State did not have a duty to address Article III standing until now, (2) the State can address standing in its reply brief, and (3) the State is not required to submit affidavits or declarations to prove standing, the question becomes whether the State has standing to vindicate its statutorily conferred legal rights under the ESA. The answer to this question is an unequivocal "yes."

## II.   The State has Article III standing to seek judicial review to remedy the ongoing violation of federal law by Secretary Haaland and Director Williams.

Now that a question regarding Article III standing has been raised, the State must identify "specific facts" to establish that it has standing. *Lujan*, 504 U.S. at 561. A petitioner has Article III standing if: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) (citation omitted).

As explained below, the State satisfies all of the elements of the Article III standing test.

**A.     The delay in making a final determination on the petition to delist has caused and continues to cause injury in fact to the State.**

For purposes of Article III standing, an actual or threatened injury in fact "may exist solely by virtue of statutes creating legal rights[.]" *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citation and internal quotation marks omitted). However, that "does not mean that a [petitioner] automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Therefore, to satisfy the injury in fact element, a petitioner must show that it has "suffered an invasion of a legally protected interest that is concrete and particularized and actual and imminent, not conjectural or hypothetical." *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021). An injury in fact is "particularized" if it affects the petitioner "in a personal and individual way." *Spokeo, Inc.*, 578 U.S. at 339. For an injury in fact to be "concrete," the injury "must actually exist." *Spokeo, Inc.*, 578 U.S. at 340.

Under the ESA, any "interested person" who has filed a petition to delist has a concrete and particularized legally protected interest in having the Secretary of the Interior (or her designee) make a final determination on the petition no later than twelve months after she receives it. 16 U.S.C. § 1533(b)(3)(B). If the Secretary does

not make the final determination within twelve months, the petitioner is authorized to seek judicial review to compel the Secretary to make the final determination. 16 U.S.C. § 1540(g)(1)(C).

As the State noted in its opening brief, Congress added the twelve month deadline in § 1533(b)(3)(B) "to 'force [agency] action on listing and delisting proposals'—action that up to that point often had proceeded at a molasses-like pace—and to hasten 'the foot-dragging efforts of a delinquent agency.'" *Friends of Animals v. Jewell*, 828 F.3d 989, 993 (D.C. Cir. 2016) (quoting H.R. REP. NO. 97-835, at 20–22 (1982) (Conf. Rep.)) (alteration in original). Congress thus intended to create a legally protectable interest for any person who files a petition to delist under the ESA to ensure that the Secretary (or her designee) takes final action on the petition in a timely manner.

Here, the lack of a final determination on the State's petition to delist has caused, and continues to cause, a particularized and concrete injury in fact to the State. The State submitted the petition to Secretary Haaland and Director Williams in January 2022 and they received it January 21, 2022. (FWS00015-00044). To date, Secretary Haaland and Director Williams have not made a final determination on the petition to delist. (*See* FWS00068-00070) (acknowledging that, as of February 6, 2023, the Federal Respondents had not started the twelve month review of the petition to delist); (ECF_1, Attachs. C & D). The State had a statutory right under

9

§1533(b)(3)(B) to have a final determination made on the petition to delist no later than January 21, 2023. That did not happen, thereby causing an injury in fact to the State. That injury in fact continues because Secretary Haaland and Director Williams still have not made a final determination on the petition.

The injury caused by the continued inaction on the petition is particular to the State because the inaction involves a petition to delist filed by the State. The injury also is real – Secretary Haaland and Director Williams did not comply with the twelve month deadline and they still have not made a final determination on the petition. Secretary Haaland and Director Williams thus have invaded and continue to invade the State's concrete and particularized legally protected interest in having them make a final determination on the State's petition to delist.

[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo, Inc.*, 578 U.S. at 342. Such is the case here. But apart from the concrete and particularized legally protected interest that the State has as a petitioner under § 1533(b)(3)(B), the State also has a concrete and particularized legally protected sovereign interest in managing grizzly bears within Wyoming. For purposes of Article III standing, "[a] state has been injured when the action it seeks to challenge injures one of the state's sovereign interests." *Maine v. Norton*, 257 F.Supp.2d 357, 373-74 (D. Me. 2003). When the ESA preempts state wildlife management laws, the state suffers injuries in fact to its

sovereign interest in managing wildlife within its borders and to its "sovereign interest in enacting and enforcing its own legal codes." *Maine*, 257 F.Supp.2d at 374.

The Wyoming Legislature has declared that all wildlife in Wyoming is the property of the State" and that, as a policy matter, the State will "provide an adequate and flexible system for control, propagation, management, protection and regulation of all Wyoming wildlife." Wyo. Stat. Ann. § 23-1-103. To implement this policy, the Legislature has enacted a comprehensive statutory scheme to regulate wildlife in Wyoming, including grizzly bears. *See generally Wyo. Statutes Annotated* Title 23 (LexisNexis 2023); *see* Wyo. Stat. Ann. § 23-1-101(a)(xiii) (defining "wildlife" as including "all wild mammals").

When the grizzly bear was listed in 1975, the Endangered Species Act preempted the State's authority to manage grizzly bears in Wyoming and to enforce Wyoming law governing grizzly bear management. Now that the grizzly bear population in the Wyoming has biologically recovered, the population should be delisted and management of grizzly bears in Wyoming should be returned to the State. The State's petition to delist seeks this result. By delaying final action on the petition, Secretary Haaland and Director Williams are causing injuries in fact to the State's sovereign interests in managing wildlife within its borders and enforcing its own legal codes by unlawfully delaying the return of management authority over grizzly bears in Wyoming to the State.

In the final analysis, the State has concrete and particularized legally protected interests in having Secretary Haaland and Director Williams make a final determination on the petition to delist as required by § 1533(b)(3)(B). Their unwillingness to make a final determination on the petition invades the State's legally protected interests and thus satisfies the injury in fact requirement for Article III standing.

**B.     The cause of the State's irreparable injury is fairly traceable to Secretary Haaland and Director Williams.**

To satisfy the traceability element, a petitioner must show "a substantial likelihood" that the respondents' actions caused the petitioner's injury in fact. *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008). Here, the State's continuing injuries in fact are the lack of a final determination on the petition to delist and the effect of that delay on the State's sovereign interest in managing grizzly bears in Wyoming – those continuing injuries are directly attributable to the inaction by Secretary Haaland and Director Williams and therefore directly traceable to them.

The Federal Respondents assert that the State cannot establish the traceability element because the State is a "contributing party to the alleged injury of delay."

12

(Fed. Resp. Br. at 19). They do not explain how or why this statement is true, and it literally cannot be true.[4]

The State has no control over how Secretary Haaland and Director Williams handle their respective job duties. Both are Federal political appointees, not state officials. Under § 1533(b)(3)(B), Secretary Haaland and Director Williams had a legal duty to make a final determination on the State's petition to delist no later than January 21, 2023, and they did not do so. The twelve month deadline in § 1533(b)(3)(B) is a "mandatory deadline that has no exceptions. *Ctr. for Biological Diversity v. Haaland*, No. 20-573 (EGS), 2023 WL 2401662, at *2 (D.D.C. March 8, 2023) (citation omitted). The State is not responsible for their deliberate disregard of the statutorily imposed deadline in the first instance or for their continuing disregard of § 1533(b)(3)(B). That unlawful conduct is attributable to Secretary Haaland and Director Williams and them alone.

---

[4] In the Hogan declaration, the Federal Respondents raise recalibration as an excuse for ignoring the twelve month deadline in § 1533(b)(3)(B) and as a reason why they need more time to take final action on the State's petition to delist. They are using recalibration as a subterfuge to distract this Court from the fact that they do not have any legitimate reason for disregarding the twelve month deadline or for continuing to refuse to make a final determination on the petition to delist. Even if their blame-shifting argument were relevant, the Federal Respondents have not submitted any evidence to show that they made a meaningful effort to address the recalibration issue with the states before the twelve month deadline.

**C.** **The remedy requested by the State will redress its injuries in fact.**

To satisfy the redressability element, a petitioner must show that a favorable decision by the court "likely" will redress its injury in fact. *N. N.M. Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*, 30 F.4th 1210, 1219 (10th Cir. 2022). In the petition for judicial review, the State asks this Court to order Secretary Haaland and Director Williams to make a final determination on the petition to delist no later than one month after this Court issues a final decision on the merits in this case. (ECF_1, ¶ 9(b)). If granted, this remedy will redress the State's injuries in fact.

**D.** **The evidence in the administrative record shows that the State has Article III standing.**

When the petitioner is the "object" of an agency inaction, "there is ordinarily little question that the … inaction has caused [the petitioner] injury, and that a judgment … requiring the action will redress it." *Lujan*, 504 U.S. at 561-62 (alteration and ellipses added). As the foregoing analysis shows, there is no question that the inaction of Secretary Haaland and Director Williams has caused injury to the State and continues to do so, and a judgment in favor of the State will redress this injury. As a result, the State has Article III standing to seek a court order to require Secretary Haaland and Director Williams to comply with § 1533(b)(3)(B). This Court should reject the Federal Respondents' request to have this case dismissed. Secretary Haaland and Director Williams must be held accountable for deliberating violating the requirements imposed by § 1533(b)(3)(B).

**III.   The Federal Respondents' requested deadline for making a final determination on the State's petition to delist is unreasonable.**

The Federal Respondents make two equitable arguments in an effort to convince this Court that they cannot make a final determination on the State's petition to delist sooner than July 2024. Neither has merit.

First, the Federal Respondents urge this court to consider "budgetary and manpower constraints" and "the need for an agency to have more time to sufficiently evaluate complex technical and scientific issues" in setting a deadline for making a final determination on the petition to delist. (Fed. Resp. Br. at 23) (citing *Nat. Res. Def. Council v. Train*, 510 F.2d 692, 712-13 (D.C. Cir. 1974)). They assert that the complex issues consideration "is particularly relevant" in this case. (Fed. Resp. Br. at 23).

This argument fails because the Federal Respondents do not identify the specific "complex technical and scientific issues" they supposedly have been grappling with or explain how or why these issues could not be resolved over the past three years (which is the amount of time since the remand in the 2017 delisting rule litigation). Although they contend that the Montana federal district court and the Ninth Circuit gave "conflicting guidance" regarding the work to be done on remand, they do not explain how any guidance given by the Ninth Circuit conflicts with guidance from the Montana federal district court or why the guidance from the Ninth Circuit does not take precedence if a conflict exists. (Fed. Resp. Br. at 21).

15

Taking a slightly different approach, the Federal Respondents contend that the State "has failed to provide any rationale why [the Federal Respondents] should impatiently run headlong into a maelstrom without giving the decision the appropriate care and deliberation it deserves." (Fed. Resp. Br. at 24). This statement ignores the fact that, to date, the Fish and Wildlife Service and the Federal Respondents have had more than three years to work on the issues identified by the Ninth Circuit.

The Service supposedly has been working on the remand issues since July 2020 and the Federal Respondents have had more than twenty months to consider the State's petition to delist. The petition to delist did not raise any new issues for the Secretary Haaland and Director Williams to consider or add any complexity to the remand issues. The petition simply invoked the statutorily prescribed process in § 1533(b)(3) to provide a legally defined path to move forward on delisting. Thus, the Federal Respondents belief that they are being forced to "impatiently run headlong into a maelstrom" cannot be squared with the facts.

The statutorily prescribed deadline in § 1533(b)(3)(B) and the congressional intent for imposing the deadline provide the rationale to move forward as quickly as possible on the petition to delist. As the Federal Respondents have conceded, Secretary Haaland and Director Williams did not make the petition a priority after they received it. Instead, they chose to work on two voluntary projects and a project

16

with a deadline more than three years from now. When left to their own devices, Secretary Haaland and Director Williams have shown that they will do anything else other than make a final determination on the State's petition to delist. Their deliberate disregard of § 1533(b)(3)(B) and their steadfast unwillingness to make a final determination on the petition have made this lawsuit necessary and provide a more than sufficient rationale for this Court to order them to make a final determination within thirty days of the final order on the merits in this case.

Think about the audacity of the Federal Respondents' argument – they have argued that an act of congress does not provide a rationale for Secretary Haaland and Director Williams to make a final determination on the petition to delist. Maybe a federal court order will do the trick.

Second, the Federal Respondents rely on information from the Hogan declaration in an effort to show that Secretary Haaland and Director Williams are busy but have been "diligently working" to gather the biological information that is required to answer the petition to delist. (Fed. Resp. Br. at 26). In making this argument, however, they focus primarily on efforts undertaken before the litigation on the 2017 delisting rule had concluded. (*Id.*). They do not explain what work has

been done on the petition since Secretary Haaland took office in March 2021 and what work has been done on the petition since it was filed in January 2022.[5]

In an effort to keep this equitable argument afloat, the Federal Respondents assert that Secretary Haaland and Director Williams cannot disregard other work so that the State "can jump to the head of the line" or ask other agency employees to work on a response to the petition to delist. (Fed. Resp. at 27). These assertions prove beyond any doubt that Secretary Haaland and Director Williams believe that the twelve month deadline in § 1533(b)(3)(B) does not apply to them and that making a final determination on the petition to delist is not a priority for them.

Of the four projects that supposedly are competing for agency resources with the petition to delist, only two involve legally required work (the remand in the Bitterroot System case and the Montana petition to delist). (*See* FWS00084, Hogan Decl. ¶ 9). And, under the remand order, it appears that the Service has at least forty-three months to complete the work on remand. *See All. for the Wild Rockies v. Cooley*, Case No. 9:21-cv-00136-DWM, Dkt. Nos. 47, 48, 50 (D. Mont. 2023). Secretary Haaland and Director Williams can give, and should have given, the

---

[5] In his declaration, Hogan identified four projects that are competing for agency resources with the work on the State's petition to delist. (FWS00084, Hogan Decl. ¶ 9). The Federal Respondents apparently have abandoned the two voluntary projects (another update to the 2021 Species Status Assessment and the reintroduction of grizzly bears to the Northern Cascades) as excuses for why they cannot make a final determination on the petition to delist until July 2024.

State's petition to delist priority over these other projects because the work on the State's petition was, and is, subject to a statutorily imposed deadline.

The Federal Respondents also are being disingenuous when they say that Secretary Haaland and Director Williams cannot assign employees from the Fish and Wildlife Service or the Department of the Interior to help with the work on the petition to delist. (Fed. Resp. Br. at 27). When it suited them, Secretary Haaland and Director Williams had employees from two regional offices of the Fish and Wildlife Service help with the work on the 2021 Species Status Assessment and the first update to that Assessment. If they could assign Service employees to help with those projects (which were not subject to a statutorily imposed deadline), then they can, and should have, done the same to ensure that the petition to delist was decided in a timely manner. [6]

---

[6] The Federal Respondents also argue that the ESA does not constrain this Court's discretion in deciding what deadline to impose in this case. (Fed. Resp. Br. at 24-26). The State agrees that this Court has discretion to decide what deadline to impose, but disagrees with the Federal Respondents' reasons for requesting a July 2024 deadline. Allowing Secretary Haaland and Director Williams to delay the final determination on the petition until the middle of next year will reward them for their deliberate disregard of the twelve month deadline in § 1533(b)(3)(B) and will defeat the congressional intent behind adding the twelve month deadline to the statute.

19

## CONCLUSION

For the foregoing reasons, and for the reasons explained in the State's Opening Brief, this Court should (1) hold that Secretary Haaland and Director Williams have violated the mandatory twelve month deadline in § 1533(b)(3)(B); (2) order Secretary Haaland and Director Williams to make a final determination on the State's petition to delist no later than one month after this Court issues an order on the merits in this case; and (3) retain continuing jurisdiction over this case to assure that Secretary Haaland and Director Williams comply with the Court's order on the merits in this case.

Dated this 20th day of September 2023.

Attorney for Petitioner State of Wyoming

/s/ *Jay Jerde*
Jay Jerde, WSB #6-2773
Special Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-5996
jay.jerde@wyo.gov

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4858 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type style requirements of D. Wyo. Local Civ. R. 10.1(a) and Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Word 2010 in 14 point font size and Times New Roman.

/s/ *Jay Jerde*

21

## CERTIFICATE OF SERVICE

I certify that on this 20th day of September 2023 I electronically filed the foregoing with the Clerk of the U.S. District Court for the District of Wyoming and served all parties using the CM/ECF system.

/s/ *Jay Jerde*