```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF WYOMING
────────────────────────────────────────────────────────────────
 STATE OF WYOMING,              | DOCKET NO. 23-CV-00092-ABJ
                                |
        Petitioner,              | (Pages 1 through 15)
                                |
        vs.                     |
                                |
 DEB HAALAND, in her official   | Cheyenne, Wyoming
 capacity as Secretary of the   | Wednesday, June 21, 2023
 United States Department of    | 9:32 a.m.
 the Interior; MARTHA WILLIAMS, |
 in her official capacity as    |
 Director of the United States  |
 Fish & Wildlife Service,       |
                                |
        Respondents.            |
────────────────────────────────────────────────────────────────

          TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

           BEFORE THE HONORABLE ALAN B. JOHNSON
                UNITED STATES DISTRICT JUDGE


APPEARANCES (via Zoom):
For the Petitioner:       JAY A. JERDE
                          TRAVIS S. JORDAN
                          WYOMING ATTORNEY GENERAL'S OFFICE
                          123 Capitol Building
                          Cheyenne, WY 82002

For the Respondents:      C. HEALY COBY HOWELL
                          ASSISTANT UNITED STATES ATTORNEY
                          DISTRICT OF OREGON
                          1000 SW Third Avenue, Suite 600
                          Portland, OR 97204


        *MELANIE L. HUMPHREY-SONNTAG, RDR, CRR, CRC*
              *Federal Official Court Reporter*
    *2120 Capitol Avenue, Room 2228, Cheyenne, WY 82001*
        *307.433.2169 * MelanieSonntagCRR@gmail.com*

      *Proceedings reported with realtime stenography;*
   *transcript produced with computer-aided transcription.*
```

I N D E X

                                                                        PAGE
Argument by Mr. Jerde                                                      5
Argument by Mr. Howell                                                     6

1          (Proceedings commenced 9:32 a.m., June 21, 2023.)

2               THE COURT:  Thank you, everyone.  It's good to see

3    you.

4               MR. JERDE:  Good morning, Your Honor.

5               MR. HOWELL:  Good morning, Your Honor.

6               THE COURT:  The matter that brings us here today is a

7    request that originates from the Attorney General's Office for

8    the State of Wyoming, represented here by Jay Jerde, and --

9    and present also, representing the respondents in this matter,

10   Deb Haaland and Martha Williams, is Mr. Howell, who formerly

11   clerked for the Honorable William Downes centuries ago but

12   appears to have been doing very well and hasn't changed much

13   since the last time I saw him.

14               MR. HOWELL:  Thank you, Your Honor.

15               THE COURT:  As we get started in this, I think I've

16   read -- read the submissions by Mr. Jerde in support of this

17   petition asking that we move forward as well as -- as

18   dictating a -- a particular response in this case.

19               Mr. Jerde, has -- you filed the original petition

20   asking for delisting in this matter on January 31 of 2022.

21   What followed then was a 90-day period for which the

22   defendants in this matter would publish in the Federal record

23   a decision as to whether or not the petition of the State was

24   meritorious.

25               Is that correct?

1        MR. JERDE:  Well, Your Honor, there was one factual
2   correction:  We filed the petition to delist on January 21st.
3        And, yes, under the applicable statute, the
4   Department of the Interior, United States Fish & Wildlife
5   Service, have up -- have 90 days, to the maximum extent
6   practicable, to make an initial finding on that petition.
7   That same statute also says that 12 months after receiving a
8   petition they shall make a final determination on it.
9        THE COURT:  Was the 90-day period met?
10       MR. JERDE:  It -- it was not, Your Honor.  They made
11  their 90-day finding on February 6th, 2023.  So not quite
12  13 months after the petition was filed.
13       THE COURT:  And their finding -- I haven't looked at
14  the Federal record to -- to find out.  Did they find there was
15  merit in -- in the petition?
16       MR. JERDE:  They -- they did, Your Honor.  The
17  statutory language is they found that the petitioned action
18  may be warranted.
19       THE COURT:  All right.  And was that under any of the
20  particular provisions that would require this matter to start
21  all over again under subsection (c)?
22       MR. JERDE:  Your Honor, I'm sorry.  I'm -- I guess
23  I don't understand your question.
24       THE COURT:  I'm just trying to recall from memory.
25  It would be 1533(b)(1)(B) -- either (4) or (5).

1           MR. JERDE:  Your Honor, I -- again, I -- I apologize.
2           THE COURT:  That's all right.  Don't -- don't --
3    I'm --
4           MR. JERDE:  You know, their -- the -- their finding
5    was that the petitioned action may be warranted, and they
6    announced that they were going to start a -- they said "status
7    review."  I believe they said "12-month status review."
8           THE COURT:  All right.  Now, does that take us kind
9    of back to the beginning again?
10          MR. JERDE:  No, Your Honor, it doesn't.  The way that
11   1533 works is that the filing of the petition provides the
12   starting point for the two specific deadlines.  And it's, you
13   know, kind of an interesting dynamic because the language "to
14   the maximum extent practicable" that's tied to the 90-day
15   finding -- and the State has acknowledged this in the past --
16   that gives the Service flexibility to make that 90-day finding
17   well past the 90 days if circumstances -- circumstances
18   warrant.
19          But there is case law out there that -- the case
20   we're primarily relying on is from the DC Circuit.  That case
21   law says that the 12-month finding is due 12 months from the
22   filing of the petition and that's a hard deadline.
23          So in a circumstance like this, we got to 90 days,
24   there was no 90-day finding, but the statutory language gave
25   the Service flexibility to -- to not make the 90-day finding

1  at that point.
2           As we moved forward in time and got to the -- to
3  12 months since the petition was filed, what the DC case law
4  that we've cited says is at that point the 90-day finding
5  can -- in effect is now due and the petitioner can seek to
6  have that decision made.  This case law also says that the
7  90-day finding has to be made before the 12-month finding.
8           So what we have here is we sit 12 months; we had no
9  90-day finding; the State waited.  The 90-day finding came on
10 February 6th, 2023.
11          So under the -- the DC authority we're citing, at
12 that point, then, the 12-month finding became due now.  And
13 it -- you know, as I read that case law, it doesn't say you go
14 back to Square One and get a full 12 months.  The finding is
15 due then.  And the State can move to compel that finding.
16          THE COURT:  Very well.  I understand your position,
17 then.
18          Mr. Howell, how does the agency see it?
19          MR. HOWELL:  Your Honor, I don't entirely agree with
20 Mr. Jerde's reading, but I do acknowledge that we have not met
21 the deadline in the statute.
22          And -- and to Your Honor's question, it doesn't reset
23 when we make the 90-day finding.  So the agency is overdue.
24          THE COURT:  Very well.
25          How -- how would we like to proceed, then?  For us to

1   give you some dates for briefing this issue with that
2   admission?  Or --
3               MR. HOWELL:  So --
4               THE COURT:  Go ahead.  Please feel free to interrupt.
5               MR. HOWELL:  I do think we should operate under local
6   rules here.  I think there are some -- some circumstances that
7   need to be taken into account.  And then I don't think it's as
8   simple as Mr. Jerde made it out to be.
9               We are currently addressing a remand from the Ninth
10  Circuit on the last rule, so -- so the Ninth Circuit struck
11  down the last delisting grizzly bear rule.
12              In that opinion there was a discussion about
13  something called recalibration.  In a nutshell and without
14  going into too much detail, basically, one of the issues with
15  grizzly bear delisting is trying to figure out how many bears
16  there are in Yellowstone.
17              The Service, US Fish & Wildlife Service, uses a
18  model, and when that model gets updated, there needs to be --
19  there was a discussion about recalibrating all of the other
20  metrics when you use a new model.  The states in the last
21  go-round didn't agree to that commitment.  The commitment
22  is -- you know, shorthand -- is called recalibration.  The
23  Ninth Circuit found that that was a violation of the
24  Endangered Species Act, and so in the remands the US Fish &
25  Wildlife Service, State of Wyoming, Montana, Idaho, they're

1   trying to figure out a new commitment to recalibration.

2            Those discussions are ongoing. They haven't been
3   completed yet, and so there are some mitigating circumstances
4   here. I note this not to excuse the Agency from their
5   statutory deadlines, but it's -- it is a little bit more
6   complicated. And so with that, I think the Court would
7   benefit from some briefing.

8            We are willing to expedite this case. I -- you know,
9   as I understand local rules, we get 90 days to file the
10  record, which would come down August 30th, with a brief from
11  Wyoming on October 1st and our reply on November 1st.

12           The Service could do -- is willing to expedite the
13  record in this case to August 1st. You know, Wyoming can have
14  the 30 days if they want it, and then we would ask for another
15  30 days, too. So, you know, in effect, we're expediting by a
16  month.

17           You know, if Wyoming wanted to file their brief
18  faster, like August 18th, we could file September 18th, so
19  that's accelerating the schedule by a month and a half.

20           The issues are discrete for the Court, but there are
21  some circumstances that we'd like to highlight and explain the
22  Service's actions.

23           I'll stop there, Your Honor.

24           THE COURT: Mr. Jerde, do you feel that you would be
25  ready to go with your brief within 15 days after the record is

1  produced in this matter?

2          MR. JERDE:  Sure, Your Honor.  But I guess I don't
3  understand why they need so long to put the record together
4  for this particular issue.

5          You know, Mr. Howell talks about certain things
6  that -- that sound like a remedy to me.  You know, the -- the
7  facts supporting the missed deadline are very straightforward.
8  And why they would need, you know, basically -- what would
9  that be? -- five or six weeks to put a record together just
10 doesn't make a lot of sense to me.

11         But, yeah, if -- you know, whenever the record's
12 filed, 15 days, we could do that.

13         THE COURT:  All right.  What do you anticipate in
14 this matter -- as to the possibility at this point -- anyone
15 beyond the parties that are before the Court right now might
16 be interested in what's going on here?

17         MR. JERDE:  Your Honor, from the State's perspective,
18 it seems unlikely.

19         Now, there are two other states that are impacted by
20 this.  The -- the petition to delist technically is a petition
21 to create a distinct population segment and then delist that
22 distinct population segment.

23         And while DPSs are a biological concept, the reality
24 is there's a geographic aspect to them, and the DPS that the
25 State has asked to be created includes some of Idaho and some

1  of Montana.
2          I am not anticipating that those two states are
3  intending to -- to be involved in this.  This is the State of
4  Wyoming's petition.
5          THE COURT:  All right.
6          Mr. Howell.
7          MR. HOWELL:  Your Honor, I think it's possible that
8  we're going to see interveners.  The State of Idaho, I'd had
9  some preliminary discussions with them.  I don't know if
10 they're going to intervene, but this rulemaking that
11 eventually is going to come out of this lawsuit -- or the
12 finding that's made -- implicates Idaho; it implicates
13 Montana.
14         I'm certain that, you know, NGOs or, you know,
15 private entities are going to be interested in the outcome of
16 this, so I don't think it's inconceivable that we see
17 interveners or amicus.  It's possible -- it's possible.
18         THE COURT:  Very well.
19         Any possibility the record could be provided at any
20 earlier time?
21         MR. HOWELL:  If Your Honor orders it, of course, we
22 can.  I mean, Mr. Jerde is -- is right.  You know, the -- the
23 record is not going to be large.
24         I think what it's going to entail is an assessment
25 from the Service as to when they can provide the 12-month

1  finding and the supporting documentation for that so that --
2  that's -- that's the reason for putting that together or the
3  length of time to put that together.
4           THE COURT:  All right.  What about July 20th?
5           And the State would be August 4.  That would be
6  15 days later.
7           And we will give you the month because you've asked
8  for it.  That gets you around Labor Day, doesn't it?
9           Sarah, what do you see as the date?
10          THE JUDICIAL ASSISTANT:  Yes, that is Labor Day.  You
11 could do -- September 5th would be Tuesday.
12          THE COURT:  September 5th or 6th?
13          MR. HOWELL:  One second, Your Honor.  Let me check.
14          Your Honor, if I could have the 8th, that would be
15 appreciated.
16          THE COURT:  Very well.
17          We will encapsulate this into an order setting those
18 dates in stone as -- barring any -- any surprises or adverse
19 incidents in this matter.
20          Now, the request that's been made by the State of
21 Wyoming would be that a final order be entered in this -- or a
22 regulation -- be entered within a month following the Court's
23 opinion or order on this matter.
24          Is that correct, Mr. Jerde?
25          MR. JERDE:  Well, Your Honor, the request is they

1  make a final determination on the petition.  If they were to
2  grant the petition, that would then kick off another process
3  for a draft and final rule.  If -- and if they were to deny
4  the petition, then that becomes an appealable decision for us.
5            THE COURT:  So it would go -- you're talking about
6  something that would go under Section (5).
7            MR. JERDE:  Yeah.  We just want them to make a
8  decision on the petition so that everyone understands what the
9  path forward is, whether it be working on a rulemaking to
10 delist or the State appealing the denial.
11           THE COURT:  All right.
12           Very well.  I . . . I think the Court's order in this
13 matter will probably resolve the issues that are before us,
14 and we'll be in a better position to predict where the case
15 will go after that.
16           In any event, it seems to me at this point that the
17 90-day decision issued more than a year later really already
18 dictates where this case may be -- may be headed.  Am I right
19 in that assessment?
20           MR. HOWELL:  So, Your Honor, the -- the 90-day
21 finding is subject to a lower standard; basically, if there's,
22 you know, credible scientific information.  And the -- the
23 US Fish & Wildlife Service made a positive 90-day finding.
24           Now, the standard for the 12-month is different.
25 It's a higher standard.  So, you know, I -- I think the 90-day

1   is an indication, but it's -- it's not dispositive of the
2   12-month.
3           It's kind of leaning in the direction, but it -- it
4   is a different standard, so it is possible that the US Fish &
5   Wildlife could reach a not warranted, a denial of the petition
6   at the 12-month stage.
7           It could also find that it was warranted, and then,
8   you know, as Mr. Jerde said, we would go into rulemaking after
9   that point.
10          So -- so the -- the 90-day is not indicative of the
11  12-month.
12          THE COURT:  In any event, the ruling --
13          MR. JERDE:  If you --
14          THE COURT:  Is the ruling of the 12-month -- whatever
15  it is, either positive or negative as to the State -- then
16  subject to judicial review in and of itself?
17          MR. HOWELL:  If it's a denial, a not warranted, it --
18  that is final agency action -- you know, assuming Wyoming can
19  make the jurisdictional requirements.  Yes, that's subject to
20  judicial review.
21          THE COURT:  Very well.
22          MR. JERDE:  Well, Your Honor, if I may -- and I --
23  I know we're not arguing the merits here.
24          But in terms of -- of what's really going on from the
25  State's perspective, I don't think there's any real dispute in

1   terms of biology.  The population's been recovered for many,
2   many years.  The Ninth Circuit decision that Mr. Howell
3   referred to basically told the States that we needed to make
4   two changes and then told the Service that they needed to do a
5   particular analysis.
6         And so what we're really talking about here is
7   updating the biology, which largely has been done through --
8   I think it's called the species status assessment that the
9   Service completed in '21 and updated in 2022, as I understand
10  it.
11        But the States have committed to making the two
12  changes the Ninth Circuit has wanted.  We just -- Mr. Howell's
13  correct.  There are some details that need to be worked out,
14  but the Service then has to do this assessment, which, in the
15  State's mind, is part of the -- you know, would have been part
16  of the 12-month analysis anyway.
17        And so, you know, this -- they're not starting from
18  ground zero with this species and with this issue, I guess is
19  what I'm saying.
20        THE COURT:  All right.
21        Gentlemen, I really appreciate you bringing me
22  up-to-date on something that, obviously, I'm not fully
23  conversant or comfortable with at this point and sharing that
24  information and fleshing out where you see the dispute
25  possibly going.

1            Anything else we need to do today?
2            MR. JERDE:  Not for the State, Your Honor.
3            MR. HOWELL:  Nothing for Federal defendants,
4    Your Honor.
5            THE COURT:  Very well.
6            Thank you.  We should get an order out to you today.
7            MR. JERDE:  All right.  Thank you, Your Honor.
8            THE COURT:  We'll stand in recess.
9        (Proceedings adjourned at 9:56 a.m., June 21, 2023.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1  C E R T I F I C A T E
2
3
4
5       I, MELANIE HUMPHREY-SONNTAG, Federal Official Court
6  Reporter for the United States District Court for the District
7  of Wyoming, a Registered Diplomate Reporter, Certified
8  Realtime Reporter, and Certified Realtime Captioner, do hereby
9  certify that I reported by realtime stenography the foregoing
10 proceedings contained herein on the aforementioned subject on
11 the date herein set forth and that the foregoing pages
12 constitute a full, true, and correct transcript.
13
14       Dated this 22nd day of September, 2023.
15
16
17
18                    /s/ Melanie Humphrey-Sonntag
19                    _____
20                    MELANIE HUMPHREY-SONNTAG
                      RDR, CRR, CRC
21                    Federal Official Court Reporter
22
23
24
25