Jay A. Jerde, WSB #6-2773
Special Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-5996
jay.jerde@wyo.gov

*Counsel for Petitioner State of Wyoming*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| STATE OF WYOMING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-00092-ABJ |
| | ) | |
| DEB HAALAND, in her official capacity | ) | |
| as Secretary of the United States | ) | |
| Department of the Interior; | ) | |
| MARTHA WILLIAMS, in her | ) | |
| official capacity as Director of the | ) | |
| United States Fish and Wildlife Service, | ) | |
| | ) | |
| Respondents. | ) | |

_____

**Petitioner State of Wyoming's Response to Federal Respondents' "Motion to Strike or in the Alternative Request for Leave to File a Surreply"**

_____

Petitioner State of Wyoming hereby responds to the "Motion to Strike or in the Alternative Request for Leave to File a Surreply" filed by Respondents Secretary of the Interior Deb Haaland and United States Fish and Wildlife Service Director Martha Williams (collectively either "Secretary Haaland and Director Williams" or "the Federal Respondents") in this case on September 30, 2023. (ECF_18).

The Federal Respondents ask this Court to strike pages 1 through 14 in the State's reply brief because, in their opinion, the State raised a new argument on standing for the first time in that brief. (ECF_18 at 2-5).[1] In the alternative, they ask this Court for permission to file a surreply to address whether the State has standing in this case or to set an oral argument. (ECF_18 at 5-6). The Federal Respondents have not given this Court a legal reason for granting the requested relief, so this Court should deny the motion.

The Federal Respondents' argument in support of the request to strike pages from the reply brief lacks merit both legally and factually. They first argue that, as a matter of law, the State may not raise a new argument for the first time in a reply brief. (ECF_18 at 1) (citations omitted). Their argument falls flat in light of the Tenth Circuit precedent holding that a petitioner is "entitled to establish standing at any time during the briefing phase" on appeal. *US Magnesium, LLC v. US EPA*, 690 F.3d 1157, 1164-65 (10th Cir. 2012) (quoting *Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527-28 (9th Cir. 1997)).

The Federal Respondents attempt to distinguish this existing and controlling precedent by arguing that *US Magnesium* "did not establish that a plaintiff or petitioner could knowingly refrain from attempting to establish standing until the opposing party objected." (ECF_18 at 4 n.1). But they concede that, under the rule from *US Magnesium*, "a litigant could produce evidence [of standing] at a later procedural stage[.]" (*Id.*) (alterations added). In making these two statements, the logic of their argument collapses

---

[1] For all ECF citations, the page number references are to the ECF page number at the top of the filed document and not to the page number at the bottom of the document.

upon itself. A petitioner cannot be precluded from demonstrating standing for the first time in a reply brief and also be able to produce evidence of standing at any stage of the proceedings. It has to be one or the other, it cannot be both. And, under *US Magnesium*, the State may establish standing at any time during the briefing phase of this case, including in its reply brief.

The Federal Respondents claim to be prejudiced here because, when the State argued standing for the first time in its reply brief, they could not respond to the State's standing arguments. (ECF_18 at 1). The Federal Respondents insist that they could not challenge standing in a motion to dismiss or in their response brief because that would have required them to disprove "an indispensable part" of the State's case. (ECF_18 at 3) (citation omitted). Their argument does not square with the established practice in federal courts. Federal courts routinely order the parties to file simultaneous briefs on standing. *See, e.g., Kleinert v. Salazar*, Civil Action No. 11-cv-02428-CMA-BNB, 2011 WL 4382614, at *3 (D. Colo. Sept. 19, 2011) (ordering the parties to "submit simultaneous briefing on standing"); *Higganbotham v. Okla. ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 640 (10th Cir. 2003) (noting that the district court had ordered the parties to submit simultaneous briefs on standing).

The Federal Respondents next take a slightly different tack, arguing that the State cannot address standing for the first time in the reply brief because it had an affirmative duty to establish standing in its opening brief. (ECF_18 at 2). In essence, this is a waiver argument. This argument fails because Article III standing "cannot be waived or forfeited." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. —, —, 139 S.Ct. 1945, 1951 (2019).

The existing and controlling precedent in *Virginia House of Delegates* makes it clear that the obligation to prove Article III standing arises only when the reviewing court or an opposing party questions the petitioner's standing. *Id.* The Federal Respondents insist that the State misconstrues *Virginia House of Delegates*, but offer no cogent reason to explain why. (ECF_18 at 4 n.1). They attempt to gloss over *Virginia House of Delegates* by arguing that, "if a plaintiff or petitioner has no obligation to establish standing in the absence of an objection by the opposing party, a court could never assure itself that it has subject matter jurisdiction under Article III." (ECF_18 at 4 n.1). In making this argument, the Federal Respondents acknowledge that a federal court "must assure *itself* that it has subject matter jurisdiction in every case," but somehow they incorrectly interpret this rule as creating an affirmative duty on the petitioner to establish standing in its opening brief. (ECF_18 at 4 & n.1) (emphasis in original).

Every federal court has "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). To satisfy this obligation, federal courts routinely *sua sponte* require the petitioner to establish standing. *See, e.g., Kleinert*, 2011 WL 4382614, at *1 (the district court raised the issue of standing *sua sponte* and ordered the parties to brief the issue); *Brown v. Buhmam*, 822 F.3d 1151, 1162-63 (10th Cir. 2016) (the court *sua sponte* ordered the parties to submit supplemental briefs on standing at the appellate stage of the case). If the Federal Respondents' view was legally correct, then there would be no cases where a federal court *sua sponte* ordered the parties to brief standing – in those cases the

court simply would have dismissed the case for failure to prove standing without giving

the petitioner an opportunity to establish standing.

The Federal Respondents also lean hard on *Lujan v. Defenders of Wildlife* in arguing

that the State had an affirmative duty to demonstrate standing in its opening brief. (ECF_18

at 3) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). But *Lujan* does not say

that a petitioner must affirmatively establish standing. In *Lujan*, the Court plainly said that

a petitioner must identify facts to establish standing "[i]n response to a summary judgment

motion" and must prove those facts at trial if the facts are "controverted." *Lujan*, 504 U.S.

at 561. *Lujan* thus clearly contemplates that standing becomes an evidence and proof matter

only when someone puts standing at issue.[2]

Finally, the Federal Respondents contend that, at the status conference, they

"reminded" the State that it must establish jurisdiction in this case. (ECF_18 at 4 & n.2)

(citing 6/21/2023 status conference hearing transcript at 13, lns. 17-20). They rely on an

out-of-context, partial statement by their litigation counsel as evidence that the State "had

sufficient prior notice that the government would contest jurisdiction if its showing was

lacking." (*Id.*). The relevant colloquy from the status conference provided as follows:

> THE COURT: Is the ruling of the 12-month -- whatever it is, either positive
> or negative as to the State -- then subject to judicial review in and of itself?

---

[2] In *Lujan*, the federal government raised the standing issue by filing a motion to dismiss
in the district court. *See Defs. of Wildlife v. Hodel*, 658 F.Supp. 43, 44 (D.D.C. 1987), *rev'd
& remanded by Defs. of Wildlife, Friends of Animals & Their Env't*, 851 F.2d 1035 (8th
Cir. 1988). The procedural posture of the standing issue in *Lujan* contradicts the Federal
Respondents' belief that a petitioner has an affirmative duty to establish Article III standing
in its opening brief.

> MR. HOWELL: If it's a denial, a not warranted, it -- that is final agency action -- you know, assuming Wyoming can make the jurisdictional requirements. Yes, that's subject to judicial review.

(6/21/2023 status conference hearing transcript at 13, lns. 14-20).

As the transcript plainly shows, the reference to "jurisdictional requirements" was made in the context of a question about a future stage of the petition process, not the current lawsuit. The phrase "assuming Wyoming can make the jurisdictional requirements" spoken in response to a question about a different stage of the litigation in no way put the State on notice that the Federal Respondents were raising lack of standing as an issue in this case.

When all is said and done, the Federal Respondents have given this Court no legal reason to grant their request to strike pages from the State's reply brief. This Court, therefore, should deny the request.

Alternatively, the Federal Respondents ask this Court to allow them to file a surreply or to schedule an oral argument. (ECF_18 at 5, 6). Granting this request will do nothing but unnecessarily delay the final decision in this case. And denying the request will not prejudice the Federal Respondents at all. The Federal Respondents had ample opportunity to voice their concerns about the State's standing before now – they could have challenged the State's standing earlier in this case or argued more assertively against standing in their response brief on the merits. By their own choice they did neither. This Court, therefore, should deny the request to allow a surreply brief or to schedule an oral argument.

Ironically, after claiming prejudice because they cannot respond to the State's standing argument, the Federal Respondents do just that in the motion to strike. (ECF_18 at 5-6). They argue the State has not established an Article III injury because the two

documents the State cited as evidence (the petition to delist and the 90 day finding on the petition) "do not address" how the State is injured by the delay in making a final determination on the petition to delist. (ECF_18 at 5-6). They are wrong.

The petition to delist establishes that the State invoked the procedural protections in § 1533(b)(3) by filing a petition and that the Federal Respondents received the petition on January 21, 2022. (FWS_00015-44). The 90 day finding on the petition shows that Secretary Haaland and Director Williams received the petition in late January 2022 and, as of February 6, 2023, they had not made a final determination on the petition. (ECF_1, Attach. C). Together, these documents demonstrate that Secretary Haaland and Director Williams did not comply with the mandatory, non-discretionary twelve month deadline imposed by 16 U.S.C. § 1533(b)(3)(B) and still have not complied with it. This evidence in the administrative record notwithstanding, the Federal Respondents have conceded these points. (ECF_15 at 9).

The injury to the State occurred on January 22, 2023, when Secretary Haaland and Director Williams did not make a final determination on the petition to delist and the injury is ongoing because they still have not made the required final determination. Congress established the twelve month deadline in § 1533(b)(3)(B) and made it judicially enforceable through the citizen suit provision in 16 U.S.C. § 1540(g)(1)(C) to prevent recalcitrant federal officials from deliberately refusing to take final action on petitions filed under the Endangered Species Act. These statutory provisions give petitioners like the State a substantive statutory right to have a timely decision made on such a petition filed.

The Federal Respondents argue that the twelve month deadline in § 1533(b)(3)(B) is a procedural requirement that, standing alone, cannot be the basis for an injury in fact under Article III. (ECF_18 at 6) (citing *Summers*, 555 U.S. at 498). This argument might hold sway if the ESA imposed only the twelve month deadline and nothing more. But the right to enforce the deadline through the filing of a citizen suit makes the twelve month deadline a substantive, legally protected right and not merely a procedural right.[3]

Without question, "Article III standing requires a concrete injury even in the context of a statutory violation," but "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 342 (2016) (alteration added). Such is the case here. Congress added the twelve month deadline to the ESA to establish a substantive legal right for any person who files a petition under the ESA. To hold otherwise would mean that Secretary Haaland and Director Williams could relegate the State's petition to administrative limbo for as long as they see fit and the State would have no recourse to vindicate its statutory right to have a timely decision on the petition or its sovereign interest in managing grizzly bears in Wyoming. To hold otherwise also would directly contravene the congressional intent behind imposing the twelve month deadline on the Secretary or her designee.

---

[3] The Federal Respondents conveniently look past the fact that: (1) the State also has a sovereign interest in managing all wildlife in Wyoming, including grizzly bears; and (2) the delay in making a final determination on the petition to delist causes injury to this sovereign interest. (ECF_16 at 14-15). The State's sovereign interest in managing grizzly bears in Wyoming is unquestionably a substantive legally protected right. *Maine v. Norton*, 257 F.Supp.2d 357, 373-74 (D. Me. 2003).

The Federal Respondents posit that the State has not suffered an Article III injury because it has caused "part of the delay it now complains of." (ECF_18 at 6). No evidence in the administrative record supports this position. The conclusory statement in paragraph 4 of Matt Hogan's declaration regarding the three states' work on recalibration in no way shows that the State prevented Secretary Haaland and Director Williams from making a final determination on the petition to delist. (FWS_00083). If the State actually had any culpability in causing the delay in making the final determination, then surely the Federal Respondents would have noted that fact in their written response to the State's notice of intent to sue letter. (ECF_1, Attach. D). They did not. (*Id.*).

The fact of the matter is that Secretary Haaland and Director Williams made no reasonable effort to comply with the twelve month deadline and did not commit to a proposed deadline for making a decision on the petition to delist until after the State filed this lawsuit. And now the Federal Respondents are grasping for excuses and casting blame towards the State in an attempt to avoid having this Court impose a deadline that will force Secretary Haaland and Director Williams to actually make a final determination on the petition.

[Intentionally Left Blank]

For the foregoing reasons, the State asks this Court to deny the Motion to Strike or in the Alternative Request for Leave to File a Surreply in its entirety.

Dated this 10th day of October 2023.

Attorney for Petitioner State of Wyoming

/s/ *Jay Jerde*
Jay Jerde, WSB #6-2773
Special Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-5996
jay.jerde@wyo.gov

## CERTIFICATE OF SERVICE

I certify that on this 10th day of October 2023 I electronically filed the foregoing with the Clerk of the U.S. District Court for the District of Wyoming and served all parties using the CM/ECF system.

/s/ *Jay Jerde*