# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2023 NOV 15  AM 10: 07

MARGARET BOTKINS, CLERK
CHEYENNE

| | |
|---|---|
| STATE OF WYOMING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:23-cv-00092-ABJ |
| DEB HAALAND, in her official capacity as | ) |
| Secretary of the United States Department of | ) |
| The Interior, and MARTHA WILLIAMS, in her | ) |
| Official capacity as Director of the U. S. Fish | ) |
| And Wildlife Service, | ) |
| | ) |
| Defendants. | ) |

## ROBERT H. ALAND'S MOTION FOR LEAVE
## TO FILE AMICUS CURIAE BRIEF

Robert H. Aland, a retired lawyer, resident of Winnetka, Illinois, and Wilson, Wyoming, adjunct professor at the Northwestern University School of Law in Chicago, an activist in environmental areas, including commenting on proposed rules issued by the U. S. Fish and Wildlife Service ("FWS"), and the plaintiff *pro bono* and *pro se* in prior and pending litigations in the federal judicial system on behalf of wildlife, including grizzly bears and gray wolves, MOVES the Court to allow him to file the Amicus Curiae Brief ("Amicus Brief," including its attachment) attached to this Motion as **Exhibit A**.

Aland files this Motion on a *pro se* and *pro bono* basis. He is not receiving, and will not seek, compensation from any person, entity or federal agency for filing this Motion or taking follow-up actions, if any, requested by the Court.

The Amicus Brief does not support either party in this case; it provides important information for the Court's consideration relating to the key deadline issue that the parties appear

to have fully briefed. Docs. 14, 15. (The parties appear to have turned their briefing attention to the standing issue. Docs. 15, 16, 17.) The goal is to allow the Court to have complete and relevant information it needs to reach a correct decision with regard to the deadline issue.

The factors that court consider in deciding whether amicus briefs should be filed have been described in numerous cases. This Court discussed those factors in *Northern Arapahoe Tribe v. Ashe*, 2012 WL 12915483 (D. Wyo. 2012). The factors include, among others, the (a) uniqueness of the information provided for the benefit of the court, (b) interest of the movant and (c) timeliness.

Federal Rule of Appellate Procedure 29(a)(3), although not directly applicable in this Court, as this Court discussed in *Northern Arapahoe Tribe*, also provides useful guidance.[1] It states that the court should consider (a) the movant's interest; (b) the reason why the amicus brief is desirable; and (c) the relevance to the disposition of the case.

Clearly these factors are satisfied in this case. *First*, the information in the Amicus Brief is important and unique and is needed by the Court to fully assess the merits, or lack thereof, of the deadline issue after learning why the State of Wyoming changed its position 180 degrees between (a) 2008 when it filed the brief attached to the Amicus Brief ***rejecting*** the 12-month mandatory interpretation of 16 U.S.C § 1533(b)(6)(A) and (b) 2023 ***approving*** that interpretation

---

[1] See, e. g., *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Services*, 994 F.3d 1166, 1175-76 (10th Cir. 2021) (amici's briefs allowed, despite parties' objections, due to amici's interests and relevance of information they provided); *Voices for Choices v. Illinois Bell Telephone Co.*, 339 F.3d 542, 545 (7th Cir. 2003) ("No matter who a would-be amicus curiae is . . ., the criterion for deciding whether to permit the filing of an amicus brief should be the same: whether the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs. "); *Neonatology Associates v. Commissioner of Internal Revenue,* 293 F.3d 128, 131 (3d Cir. 2002) (then-Judge, now Supreme Court Justice, Alito stated that the requirements are "(a) an adequate interest, (b) desirability, and (c) relevance.").

of the identical mandatory terminology of 16 U.S.C § 1533(b)(3)(A) in the strongest possible

terms as follows (Doc. 14 at 3):

> For the federal agency that must comply with it, a mandatory deadline in a federal
> statute is like a prairie hail storm - the agency cannot run from it, cannot hide
> from it, and cannot make it go away.  Yet Secretary Haaland and Director
> Williams apparently believe the mandatory deadlines in the Endangered Species
> Act do not apply to them. . . . The fact that the State had to sue Secretary Haaland
> and Director Williams to force them to comply with the ESA is appalling.  And
> their stated reason for their inaction - too much work to do and not enough
> resources to do it - is preposterous.  Their unlawful conduct must be remedied,
> swiftly and resoundingly.

The difference between the two statutes relates only to the *time* when the 12-month

period begins.  That time begins under 16 U.S.C § 1533(b)(6)(A), the deadline statute involved

in the earlier *Aland* case described in the Amicus Brief, on the date a proposed rule is published

by the FWS in the Federal Register; it begins under 16 U.S.C § 1533(b)(3)(A), the deadline

statute involved in this case, on the day after the "may be warranted" finding is published.

This is a distinction completely without meaning; the language of the statutes is identical.

The State of Wyoming clearly recognizes this point as indicated by its reference in the above

quotation in the plural to "mandatory *deadlines* in the Endangered Species Act." (Emphasis

added.)

*Second,* Aland has a direct personal interest in the outcome of this case in light of his

past, and anticipated future, litigation against the (a) FWS, if it violates the 12-month ESA

deadline, as it has in both prior grizzly bear litigations, and (b) the State of Wyoming if it

chooses to becomes involved in the future litigation as intervenor or amicus.[2]

---

[2] It is anticipated that the FWS will (a) delist grizzly bears in response to pending petitions, which is the subject of this case initiated by the State of Wyoming, and (b) reject pending petitions to re-list gray wolves.  If either happens, litigation almost certainly will ensue.

*Third*, the Amicus Brief is relevant to the disposition of this case because it relates to the identical deadline issue involved in this case.  It will assist in the Court's legal analysis.

*Fourth*, the information has not been, and almost certainly will not be, provided to the Court by the parties.

*Fifth*, the Motion is timely, since the case is at an early stage, and the parties have ample time to address, upon the Court's request, the deadline issue presented by the Amicus Brief.

If the State of Wyoming believes its legal about-face between 2008 and 2023 with regard to the mandatory nature of ESA deadlines is legally justified -- no doubt based upon its desire to have grizzly bears delisted under the ESA and turned over to State management -- it should be required to provide that justification to the Court.

Stated differently, if the FWS delists grizzly bears for the third time[3] in the future outside the 12-month deadline, and that delisting is challenged judicially on the ground that the FWS violated the deadline, potential litigants need to know whether the State can do yet another about-face by returning to its 2008 position.

Aland was informed on November 13, 2023, by separate emails, that the State of Wyoming and the FWS object to the Motion.[4]

WHEREFORE, the undersigned requests the Court to grant this Motion and order the Amicus Brief to be filed by the Clerk of the Court and served on the parties.  A [Proposed] Order is submitted simultaneously herewith and separately by email to the Court.

---

[3] The two prior grizzly bear delisting cases, which reached the same result (final delisting rule invalidated), were *Greater Yellowstone Coalition v. Servheen*, 672 F.Supp.2d 1105 (D. Mont. 2009), aff'd, 665 F.3d 1015 (9th Cir. 2011), and *Crow Indian Tribe v. United States*, 343 F.Supp.3d 999 (D. Mont. 2018), aff'd, 965 F.3d 662 (9th Cir. 2020).

[4] This Court held in *Northern Arapahoe Tribe*, 2012 WL 12915483 at *3, that opposition to filing an amicus brief is not an important factor when, as in this case, the other factors clearly favor filing the brief.

Respectfully submitted,

Robert H. Aland, Movant

140 Old Green Bay Road
Winnetka, IL  60093-1512
Telephone:  (847) 784-0994
E-mail:  rhaland@comcast.net

November 14, 2023

Attachment:
- **Exhibit A** -- Amicus Curiae Brief Filed by Robert H. Aland

## Certificate of Service

Plaintiff certifies that on November 14, 2023, he filed the foregoing Motion and [Proposed] Order by sending then via United Parcel Service, for overnight delivery, to the Clerk of the Court at the following address:

Clerk of the Court
United States District Court
2120 Capitol Avenue
Room 2131
Cheyenne, WY 82001-3658

Plaintiff also certifies that on November 14, 2023, by previous agreement, he served these documents by email on the following counsel of record for the parties:

Jay A. Jerde, Counsel for the State of Wyoming; and

Coby Howell, Counsel for Defendants.

Robert H. Aland

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **STATE OF WYOMING,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:23-cv-00092-ABJ |
| **DEB HAALAND,** in her official capacity as ) | |
| Secretary of the United States Department of ) | |
| The Interior, and **MARTHA WILLIAMS,** in her ) | |
| Official capacity as Director of the U. S. Fish ) | |
| And Wildlife Service, ) | |
| ) | |
| Defendants. ) | |

## AMICUS CURIAE BRIEF FILED BY ROBERT H. ALAND

### I. Introduction

Robert H. Aland (Aland"), is a retired lawyer; a resident of Winnetka, Illinois, and

Wilson, Wyoming; an adjunct professor at the Northwestern University School of Law in

Chicago; an activist in environmental areas, including commenting on proposed rules issued by

the U. S. Fish and Wildlife Service ("FWS"); and the plaintiff *pro bono* and *pro se* since his

retirement over 20 years ago in prior and pending litigations in the federal judicial system on

behalf of wildlife, including grizzly bears and gray wolves.

### II. First Grizzly Bear Litigation

On August 2, 2007, Aland filed a civil suit for declaratory and preliminary and permanent

injunctive relief under the citizen suit provision of the Endangered Species Act of 1973 ("ESA"),

16 U.S.C. § 1540(g)(1), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 – 706.

Aland's suit was filed in the U. S. District Court for the Northern District of Illinois, Eastern

Division, the district of Aland's residence, but was transferred upon federal defendants' motion

to the U. S. District Court for the District of Idaho, where a similar civil suit was pending.  The

style and number of Aland's suit in the Idaho District Court was *Aland v. Kempthorne and Hall*,

Case No. CV-08-24-S-EJL.[1]

The action sought to declare invalid, and enjoin the implementation of, the final agency

action published by the FWS and the U. S. Department of the Interior ("DOI") in the Federal

Register on March 29, 2007 (72 Fed. Reg. 14866 et seq.), establishing grizzly bears in the

Greater Yellowstone Ecosystem as a distinct population segment pursuant to 16 U.S.C. §

1532(16) and removing that segment from the list of threatened and endangered species under

the ESA, as set forth in 50 C.F.R. § 17.11, effective April 30, 2007.[2]

Aland's 10th claim for relief in the 2007 Complaint alleged that the clear and plain

mandatory language of 16 U.S.C. § 1533(b)(6)(A) required the FWS, within the one-year period

following publication of the proposed delisting rule in the Federal Register (i.e., November 17,

2005), to publish in the Federal Register either a final rule, a final rule revising an existing

determination, a notice that that the one-year period was being extended or a notice withdrawing

the proposed rule; that the FWS did not take an extension; that the final rule was published in the

Federal Register on March 29, 2007, over four months after the one-year mandatory deadline

expired (i.e., November 17, 2006); and, therefore, that the final rule was invalid and should be

vacated and set aside under the APA.

---

[1] Dirk Kempthorne was the Secretary of the DOI, and Dale Hall was the Director of the FWS.  Both were sued in their official capacities.

[2] The Idaho District Court stayed the *Aland* case pending resolution of a comparable case in the U. S. Court of Appeals for the Ninth Circuit on appeal from the Montana District Court.  That case was resolved in favor of the plaintiff by invalidating the grizzly bear delisting rule.  *Greater Yellowstone Coalition v. Servheen*, 672 F.Supp.2d 1105 (D. Mont. 2009), aff'd, 665 F.3d 1015 (9th Cir. 2011).  Thereafter the *Aland* case was dismissed as moot.

The plaintiff in this case, the State of Wyoming, filed an amicus brief in the *Aland* case in which it argued that the deadline set forth in 16 U.S.C. § 1533(b)(6)(A) was *not* legally mandatory so that the late publication of the final delisting rule did not require that rule to be vacated and set aside. A copy of the State of Wyoming's brief is attached as **Exhibit 1**.

The State's brief provides important information relating to the key deadline issue in this case that the parties appear to have fully briefed. Docs. 14, 15. The parties appear to have turned their attention to the standing issue. Docs. 15, 16, 17.

The information provided in the State's brief will enable the Court to fully assess the merits, or lack thereof, of the deadline issue after learning why the State changed its position 180 degrees between (a) 2008 when it filed the attached brief *rejecting* the 12-month mandatory interpretation of 16 U.S.C § 1533(b)(6)(A) and (b) 2023 *approving* that interpretation of the identical mandatory terminology of 16 U.S.C § 1533(b)(3)(A) in the strongest possible terms as follows (Doc. 14 at 3):

> For the federal agency that must comply with it, a mandatory deadline in a federal statute is like a prairie hail storm - the agency cannot run from it, cannot hide from it, and cannot make it go away. Yet Secretary Haaland and Director Williams apparently believe the mandatory deadlines in the Endangered Species Act do not apply to them. . . . The fact that the State had to sue Secretary Haaland and Director Williams to force them to comply with the ESA is appalling. And their stated reason for their inaction - too much work to do and not enough resources to do it - is preposterous. Their unlawful conduct must be remedied, swiftly and resoundingly.

The difference between two deadline statutes relates only to the *time* when the 12- month period begins to run. That time begins under 16 U.S.C § 1533(b)(6)(A), the deadline statute involved in the earlier *Aland* case, on the date a proposed rule is published by the FWS in the Federal Register; it begins under 16 U.S.C § 1533(b)(3)(A), the deadline statute involved in this case, on the day after the "may be warranted" finding is published.

This is a distinction completely without meaning; the statutory language is identical.  The State clearly recognizes this point as indicated by its reference in the above quotation in the plural to "mandatory *deadlines* in the Endangered Species Act."  (Emphasis added.)

If the State of Wyoming believes its legal about-face between 2008 and 2023 with regard to the mandatory nature of ESA deadlines is legally justified -- no doubt based upon its desire to have grizzly bears delisted under the ESA and turned over to State management -- it should provide that justification to the Court for consideration in its legal analysis and decision.

### III.  Conclusion

If the FWS delists grizzly bears for the third time[3] in the future outside the 12-month deadline, and that delisting is challenged judicially on the ground that the FWS violated the deadline, potential litigants need to know whether the State of Wyoming can do yet another about-face by returning to its 2008 position.

Respectfully submitted,

Robert H. Aland, Amicus Curiae

140 Old Green Bay Road
Winnetka, IL  60093-1512
Telephone:  (847) 784-0994
E-mail:  rhaland@comcast.net

November 14, 2023

---

[3] The two prior grizzly bear delisting cases, which reached the same result (final delisting rule invalidated), were *Greater Yellowstone Coalition v. Servheen,* 672 F.Supp.2d 1105 (D. Mont. 2009), aff'd, 665 F.3d 1015 (9th Cir. 2011), and *Crow Indian Tribe v. United State,* 343 F.Supp.3d 999 (D. Mont. 2018), aff'd, 965 F.3d 662 (9th Cir. 2020).

- 4 -

Attachment:

- **Exhibit 1** - *Aland v. Kempthorne and Hall*, Case No. CV-08-24-S-EJL - State of Wyoming's Conditional Amicus Brief Supporting the Federal Defendants' Response to, and Their Cross Motion for, Summary Judgment with Regard to Plaintiff's Tenth Claim for Relief (Feb. 12, 2008).

**EXHIBIT 1**

C. Levi Martin (WY No. 6-3781)
Senior Assistant Attorney General
Wyoming Attorney General's Office
123 Capitol Avenue
Cheyenne, Wyoming 82002
(307) 777-7841 (phone)
(307) 777-3542 (fax)
lmarti@state.wy.us

William G. Myers III (ISB No. 5598)
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
Boise, Idaho  83702
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
wmyers@hollandhart.com

Attorneys for Applicant for Amicus Curiae, State of Wyoming

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBERT H. ALAND, | ) | |
| | ) | Case No.:  CV-08-24-S-EJL |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | STATE OF WYOMING'S |
| | ) | CONDITIONAL AMICUS BRIEF |
| DIRK KEMPTHORNE, Secretary of the | ) | SUPPORTING THE FEDERAL |
| United States Department of the Interior, | ) | DEFENDANTS' RESPONSE TO, |
| and H. DALE HALL, Director of the | ) | AND THEIR CROSS MOTION |
| United States Fish and Wildlife Service, | ) | FOR, SUMMARY JUDGMENT |
| | ) | WITH REGARD TO PLAINTIFF'S |
| Defendants. | ) | TENTH CLAIM FOR RELIEF |

The State of Wyoming (Wyoming), through the undersigned counsel, hereby submits its

conditional amicus brief supporting: (1) the denial of Plaintiff's motion for summary judgment;

and (2) the granting of Federal Defendants' motion for summary judgment, both with regard to

Plaintiff's Tenth Claim for Relief.

## FACTUAL BACKGROUND

In 1975, the grizzly bear was listed as a threatened species in the contiguous United

States. *See* 40 Fed. Reg. 31734 (July 28, 1975).  In response to the listing, the State of Wyoming

and the Wyoming Game and Fish Department (WGFD), along with other states, federal

agencies, and private groups, renewed and intensified their commitment to preserving the grizzly

bear in the Greater Yellowstone Area (GYA). *See* 70 Fed. Reg. 69854, 69856-57 (Nov. 17,

2005). In November 2005, the success of those efforts had culminated in the proposed

designation of a distinct population segment (DPS) for grizzly bears in the GYA and the

simultaneous removal of that GYA grizzly bear population from the list of threatened species.

*See id.* at 69854. The public was invited to comment on that proposal for 90 days. *See id.* at

69854 & 69882.

In January 2006, the United States Fish and Wildlife Service (Service) announced it was

scheduling an additional public hearing on the proposed delisting because of its complexity. *See*

71 Fed. Reg. 4097 (Jan. 26, 2006). In February 2006, the Service announced it was extending

the comment period for 30 days because of the complexity of the proposal. *See* 71 Fed. Reg.

8251 (Feb. 16, 2006). In June 2006, the Service advised that it had experienced a technological

error resulting in the loss of 22 comments out of 215,000 comments received. *See* 71 Fed. Reg.

37525 (June 30, 2006). The Service requested those 22 people resubmit their comments by July

14, 2006. *See id.* at 37526.

On March 29, 2007, the Service issued a final rule designating GYA grizzly bears as a

DPS and simultaneously removing that DPS from the list of threatened species. *See* 72 Fed.

Reg. 14866 (Mar. 29, 2007) (Final Rule).

## **PROCEDURAL BACKGROUND**

On June 4, 2007, Western Watersheds Project, *et al.*, filed a complaint in Federal District

Court for the District of Idaho challenging the Final Rule. *See Western Watersheds Project v.*

*Servheen*, No. 07-CV-243-EJL (D. Id.) (*Western Watersheds Project v. Servheen*).  On October

31, 2007, Wyoming was granted intervenor status in that Idaho case.  *See id.*

On August 2, 2007, the Plaintiff in this case filed a complaint in Federal District Court, in

the Northern District of Illinois, raising substantially similar issues and requesting the same relief

as in *Western Watersheds Project v. Servheen.*  The Illinois District Court transferred Plaintiff's

case to the District of Idaho for those reasons.  *See* MEM. OP. & ORDER GRANTING MOT. FOR

CHANGE IN VENUE (Dec. 11, 2007).

Before the transfer, Plaintiff had filed a motion for summary judgment on the Tenth

Claim for Relief in the Complaint, but the motion was stayed pending the transfer.  The Tenth

Claim:

> alleges that Defendants were required by the applicable statutory
> provisions . . . to take actions within certain mandatory deadlines;
> that Defendants failed to take such actions; that Defendants
> violated the statutory provisions by such failure; that such failure
> was arbitrary and capricious and otherwise not in accordance with
> law and without observance of procedure required by law[.]

PL.'S MEM. IN SUPP. OF MOT. FOR SUMM. J. at 1.  The Federal Defendants' response to Plaintiff's

motion for summary judgment on Plaintiff's Tenth Claim for Relief is now due to this Court on

February 11, 2008.

On January 30, 2008, the Federal Defendants in this case moved to consolidate it with

*Western Watershed Project v. Servheen.*  Wyoming did not oppose that consolidation.  However,

consolidation will not occur before a response to Plaintiff's motion is due.  Accordingly,

Wyoming has moved this Court for consideration of this amicus brief.

## STANDARD OF REVIEW

Summary judgment shall be granted if the record shows that there are no genuine issues

of material fact and the moving party is entitled to a judgment as a matter of law.  *See* FED. R.

CIV. P. 56(c).  The party moving for summary judgment has the burden of demonstrating it is

entitled to summary judgment.  *Retail Clerks Union Local 648, AFL-CIO v. Hub Pharm., Inc.*,

707 F.2d 1030, 1033 (9th Cir. 1983).

## SUMMARY OF THE ARGUMENT

The Administrative Procedures Act (APA) does not provide this Court with jurisdiction

to grant the Plaintiff the remedy he is seeking.  Also, Congress did not intend such drastic results

when it passed 16 U.S.C. § 1533(b)(6)(A).  Congressional intent is clear from the plain language

of the statute under which the Plaintiff seeks relief and the statute's legislative history.  In

addition, the ESA does not authorize the remedy the Plaintiff seeks.  Because Plaintiff is not

entitled to a judgment as a matter of law on the Tenth Claim in the Complaint, Plaintiff's motion

should be denied and the Federal Defendants' motion should be granted.

Plaintiff complains that the Service was not quick enough in publishing its decision on

whether to remove the GYA grizzly bear population from the list of threatened species.  *See*

PL.'S MEM. IN SUPP. OF MOT. FOR SUMM. J. at 1.  However, Plaintiff is not seeking to "compel

agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The Service

has already published its decision.  *See* 72 Fed. Reg. 14866 (Mar. 29, 2007).  Further, Plaintiff

does not allege he was prejudiced by virtue of the lateness of the decision.  Plaintiff is simply

hoping that a procedural requirement, intended to aid those in their efforts to force agency

decision-making, will actually eliminate the force and effect of an agency decision already made.

## ARGUMENT

The material facts relating to the Tenth Claim are not in dispute.  On November 17,

2005, the Service published its proposal to designate grizzly bears in the GYA as a DPS and

simultaneously remove them from the list of threatened species.  *See* 70 Fed. Reg. 69854 (Nov.

17, 2005). In accordance with 16 U.S.C. § 1533(b)(6)(A), the Service was required to publish its

determination as to the propriety of that proposal in the Federal Register within one year, or

invoke a six month extension as permitted by Section 1533(b)(6)(B)(i). The Service did not

invoke an extension under Section 1533(b)(6)(B)(i). Instead, the decision was made to designate

the GYA grizzly bears as a DPS and remove that population from the list of threatened species.

That decision was published on March 29, 2007, approximately four-and-one-half months after

the one year timeframe. *See* 72 Fed. Reg. 14866 (Mar. 29, 2007).

Because there are no genuine issues of material fact with respect to the Tenth Claim,

the question becomes whether Plaintiff is entitled to a judgment as a matter of law on the Tenth

Claim. Plaintiff dedicates a considerable portion of his brief describing the mandatory nature of

the decision-making time frames established in 16 U.S.C. § 1533(b)(6)(A). *See* PL.'S MEM. IN

SUPP. OF MOT. FOR SUMM. J. at 4-7. He then argues that the Service failed to comply with these

mandatory time frames in issuing the grizzly bear delisting rule and, as a result, 5 U.S.C. §

706(2) in the APA requires this Court to set aside that Final Rule and to order the Service to

begin the process anew. *See* PL.'S MEM. IN SUPP. OF MOT. FOR SUMM. J. at 10-11. This

argument lacks merit as a matter of law because: (1) this Court lacks jurisdiction under the APA

to grant the relief Plaintiff seeks; (2) the ESA does not authorize the remedy Plaintiff seeks; and

(3) Plaintiff has suffered no prejudice, therefore no judicial remedy is warranted.

A.      **This Court lacks jurisdiction under the APA to grant the relief Plaintiff seeks.**

Plaintiff seeks a remedy under 5 U.S.C. §706(2) for the Service's failure to comply with

mandatory time frames in 16 U.S.C. 1533(b)(6)(A). However, in fashioning a remedy under the

APA, the reviewing court does not have the "authority to grant relief if any other statute that

grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

In this case, 16 U.S.C. § 1540(g)(1) provides the consent for Plaintiff's lawsuit. *See*
Compl., ¶ 7. The Tenth Claim falls within the purview of Section 1540(g)(1)(C), which
authorizes "any person [to] commence a civil suit on his own behalf ... against the Secretary
where there is alleged a failure of the Secretary to perform any act or duty under [S]ection 1533
... which is not discretionary with the Secretary." With respect to the remedy for a claim
brought under Section 1540(g)(1)(C), Section 1540(g)(1) provides that "[t]he district courts shall
have jurisdiction ... to order the Secretary to perform such act or duty[.]" 16 U.S.C. §
1540(g)(1).

The unambiguous language in Section 1540(g)(1) provides only one remedy for the
Secretary's failure to perform any non-discretionary act or duty under Section 1533 – a court
order requiring the Secretary to perform the act or duty. As a matter of basic statutory
construction, when a statute provides for a specific remedy, all other remedies are precluded by
implication. *See Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1084 (9th Cir. 2007)
(explaining the *expressio unius est exlusio alterius* canon of statutory construction). Section
1540(g)(1) thus impliedly forbids all other remedies for the Secretary's failure to perform any
non-discretionary act or duty under Section 1533, including the remedy Plaintiff seeks in the
Tenth Claim. Because Section 1540(g)(1) provides the exclusive remedy for the Tenth Claim,
this Court lacks jurisdiction under the APA to grant the remedy Plaintiff seeks and, as a result,
Plaintiff's motion for summary judgment on the Tenth Claim must be denied.

**B.      The ESA does not authorize the remedy Plaintiff seeks.**

By asking this Court to set aside the final delisting rule because the Service failed to
adhere to the mandatory time frames in Section 1533(b)(6)(A), Plaintiff essentially argues that
the Service had no legal authority to issue the delisting rule after the one year time period had

expired.  To determine whether an agency loses its jurisdiction over a matter by failing to

comply with a statutory time limit, this Court must examine whether: (1) the statute both

expressly requires the agency to act within a particular time period and specifies a consequence

for failure to comply with the provision; and (2) by looking to other sources of congressional

intent, it can be determined that Congress intended to impose a jurisdictional limitation on

agency action.  *See Brock v. Pierce County*, 476 U.S. 253, 259-63 (1986).

The unambiguous language of the ESA easily answers the first question.  Section

1533(b)(6)(A) provides as follows, in pertinent part:

> [w]ithin the one-year period beginning on the date on which
> general notice is published . . . regarding a proposed regulation, the
> Secretary shall publish in the Federal Register . . . , either a final
> regulation to implement such determination, a final regulation to
> implement such revision or a finding that such revision should not
> be made, notice that such one-year period is being extended under
> subparagraph (B)(i), or notice that the proposed regulation is being
> withdrawn under subparagraph (B)(ii), together with the finding on
> which such withdrawal is based[.]

Nothing in the unambiguous language of Section 1533(b)(6)(A) or any other statutory

provision in the ESA divests the Service of jurisdiction to issue a delisting if the Service fails to

comply with the one year deadline.

Nothing in the legislative history suggests that Congress intended to divest the Service

of decision-making authority as a consequence for failing to adhere to the mandatory time

frames.  Congress enacted Section 1533(b)(6)(A) "[t]o ensure that [listing and delisting]

proposals, whether developed initially by the Secretary or by petition, are *acted upon* quickly[.]"

H.R. REP. NO. 97-835, at 20 (1982)(Conf. Rep.).  The legislative history of Section

1533(b)(6)(A) thus indicates that Congress intended for the mandatory time frames in Section

1533(b)(6)(A) to speed up agency action, not to limit such action.

Similar to *Brock*, the remedy available for a failure to meet the one-year deadline under 16 U.S.C. § 1533(b)(6)(A) is to bring an action to force the determination to be made. Plaintiff does not, and cannot, cite any authority for the proposition that exceeding the one-year timeframe divests the Service of its jurisdiction to make the decision. The provisions of 16 U.S.C. § 1533(b)(6)(A) are in place to force a decision, not eliminate one. Accordingly, the validity of any claim of failing to abide by the time requirements under 16 U.S.C. § 1533(b)(6)(A) was abrogated the minute the Service published its decision.

**C.      No judicial action is warranted because plaintiff has not suffered any prejudice.**

Even if this Court were to determine that a remedy is available under 5 U.S.C. §706(2), Plaintiff has not identified any concrete harm which he has suffered as a result of the delay in the publication of the Final Rule. Plaintiff is simply advancing a legal technicality argument in an attempt to enjoin the Final Rule. PL.'S MEM. IN SUPP. OF MOT. FOR SUMM. J. at 13. The Ninth Circuit has addressed similar actions in the ESA context and has found such tardiness to be harmless. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1220-21 (9th Cir. 2004).

Under 16 U.S.C. § 1536(c)(1), a biological "assessment shall be completed within 180 days after the date on which initiated[.]" In *Sausalito*, the Park Service conceded it violated 16 U.S.C. § 1536(c)(1) of the ESA by not completing a biological assessment within 180 days after initiating it. *See Sausalito*, 386 F.3d at 1220.

When considering the remedy for this failure, the Court acknowledged the requirement under 5 U.S.C. § 706 that "account shall be taken of the rule of prejudicial error." *See id.* at 1220. In so doing, the Court stated, "[w]here the agency's error consisted of a failure to comply with regulations in a timely fashion, we have required plaintiffs to identify the prejudice they have suffered [, and when plaintiffs fail to do so], no judicial action is warranted." *Id.*

(quotations and citations omitted). Because the Plaintiff in this case has failed to identify any

prejudice suffered, any error assignable to the four-and-one-half month delay in publishing the

Final Rule is harmless. Accordingly, no judicial action is warranted and Plaintiff is not entitled

to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c).

## CONCLUSION

For the foregoing reasons, with regard to the Plaintiff's Tenth Claim for Relief, the

Plaintiff's motion for summary judgment should be denied and the Federal Defendants' motion

for summary judgment should be granted.

Respectfully submitted this 12th day of February, 2008.

FOR THE STATE OF WYOMING:

> //William G. Myers III//
> William G. Myers III
> HOLLAND & HART LLP
> Suite 1400, U.S. Bank Plaza
> 101 South Capitol Boulevard
> Boise, Idaho  83702
> Telephone:   (208) 342-5000
> Facsimile:   (208) 343-8869
> wmyers@hollandhart.com
>
> C. Levi Martin
> Senior Assistant Attorney General
> 123 Capitol Building
> Cheyenne, WY 82002
> Telephone: (307) 777-7841
> Facsimile: (307) 777-3542
> lmarti@state.wy.us

## CERTIFICATE OF SERVICE

I certify that on February 12, 2008, I electronically filed the foregoing with the Clerk of the District Court of Idaho using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

> Robert H. Aland
> 140 Old Green Bay Road
> Winnetka, IL 60093-1512
> rhaland@comcast.net
>
> Coby Howell
> Trial Attorney, Wyoming Bar No. 6-3589
> U.S. Department of Justice
> Environment & Natural Resources Division
> Wildlife & Natural Resources Division
> c/o U.S. Attorney's Office
> 1000 SW Third Avenue
> Portland, OR 97204-2902
> coby.howell@usdoj.gov

> _____//William G. Myers III//_____
> Holland & Hart, LLP
> Atty. for Applicant for Amicus Curiae
> State of Wyoming

3829369_1.DOC